(C.D. 4692)

McDonnell Douglas Corp. *v.* United States

Court No. 72-6-01395

(Decided on rehearing [C.D. 4604] April 15, 1977)

*Louis Lieber, Jr.* and *B. David Freundlich,* attorneys for the plaintiff.
*Glad, Tuttle & White (Edward N. Glad* of counsel), co-attorneys for the plaintiff.
*Barbara Allen Babcock,* Assistant Attorney General *(Bernard J. Babb,* trial attorney), for the defendant.

Richardson, Judge: This action is before the court on rehearing following a decision and judgment rendered July 22, 1975, in C.D. 4604 (75 Cust. Ct. 6) wherein the court held, among other things, that the plaintiff-importer had failed to establish under its first cause of action entitlement to duty-free treatment in accordance with TSUS item 800.00 for the American-made components of the imported DC-9 airplane involved in the case. The court's decision in this regard was predicated upon both procedural and substantive considerations.

On November 10, 1975, and at the instance of plaintiff, the court granted a rehearing in the case for the purpose of enabling plaintiff to introduce into the record (1) evidence to the effect that plaintiff's

failure to comply with the requisite customs regulations governing item 800.00 classification was due to no fault on its part, and in addition, (2) evidence that would satisfy such regulations. On the basis of the testimony and other evidence introduced into the record during rehearing the court is of the opinion that plaintiff's failure to comply with the customs regulations relative to an item 800.00 classification was *self-induced*.

There is no question but that plaintiff made no effort to enter the involved airplane under item 800.00. Its posture here is that this particular airplane was but one of a number of aircraft returned to plaintiff after service abroad, and that after the customs service *refused* to permit partial free entry of the first of such returned aircraft, attempts on plaintiff's part in making partial free entry of the remaining aircraft in this category was rendered futile.

However, the record as developed on rehearing shows that even with respect to the first of such returned aircraft plaintiff did not tender to customs the requisite entry and supporting documents for item 800.00 treatment of that airplane, although apparently primed to do so. In this connection William H. Holmes, a customs broker in the employ of the firm of Guy B. Barham, plaintiff's broker in these transactions, testified in response to a question put to him by the court during rehearing (R. 39–40):

> JUDGE RICHARDSON: And the first one — they would not consider it as American Goods Returned?
>
> MR. HOLMES: *When I originally approached Customs*, as to how this aircraft was coming in — they told me to enter it as American Goods Returned, paying the duty on items of foreign origin, which had not been previously duty paid and I prepared our delivery permit, and obtained release of the aircraft on the position of American Goods Returned, and payment of the duty on the items of foreign manufacture, which had not been previously duty paid. And after the release of the aircraft, *we were advised by Customs*, that they had changed their mind, and that we would have to — *it was their opinion* that we would have to pay duty. on the full value of the aircraft. However, they were submitting this to Washington for the Bureau of Customs to make a decision.
>
> In the meantime, we were unable to prepare any type of an entry, pending this decision, and as it was brought out, we had a late filing of this entry, pending this decision. The decision that came from Washington was that we would have to pay duty on the full value of the aircraft and that all future aircraft would have to be entered on the same basis, with full payment of the duty And, *based on that*, there was no need to file these other documents to establish American origin because Customs had refused to enter this as an aircraft of American origin, even though the major value of this aircraft is of American origin and manufacture — there are certain items imported from Canada, and other foreign

countries, under bond, and those items, which had not been duty paid, we felt should be duty paid, and we felt we had owed. We offered to pay that duty, and Customs said – no – we want full duty on all parts of American origin, and *based on that*, we could not file any future entries on aircraft except to duty pay them. [Emphasis added.]

Thus, it clearly appears from the testimony of the witness Holmes that the customs service had never *refused* to accept any entry tendered on plaintiff's behalf which looked toward entry of this aircraft under item 800.00. On the contrary, the record shows that at the solicitation of the broker the district director had given the broker an *opinion* to the effect that the aircraft would be treated as fully dutiable—a position that was subsequently backed up by the Customs Bureau in Washington, D.C. to whom the question had been referred by the district director for a determination. However, the decision not to make a duty-free entry was entirely that of the plaintiff, albeit made in the light of adverse administrative opinions. Had plaintiff filed the proper documents, made timely protests, been denied and appealed to the Customs Court, the case would not be vulnerable to the technical jurisdictional questions raised by the defendant.

Moreover, even if late filing of the requisite documentation supporting an item 800.00 classification be now permitted under the circumstances of this case, plaintiff has not addressed itself to the substantive aspect of the case. The district director has not indicated at any time that he would be inclined to grant item 800.00 treatment to the aircraft in issue but for the absence of the requisite documentation. And in this court plaintiff had not sought on rehearing to establish that the involved airplane was returned to this country *without advancement in value* or *improvement in condition.*

If anything, the record on rehearing establishes that the aircraft in issue underwent some kind of modification while in foreign service.* Exhibit 10 (foreign shipper's declaration) introduced into the record on rehearing indicates that its galleys and tire recaps, among other things, are of foreign manufacture. This information tends to coincide with the notations "Timmons galleys" and "Swiss Recaps on AGR Rubber" written on the pro forma invoice by the customs supervising inspector on September 8, 1968, at the time the aircraft was examined and released, as if to identify at that time construction in and articles on the aircraft of foreign origin.

Although tire recaps do not, in the court's view constitute an improvement in condition over the original new tires, the installation of galleys in an airplane's fuselage is a different matter. The construc-

---

* Mr. Needle testified at the initial session that when the aircraft was returned to plaintiff the original seats had been removed and other American-made seats had been brought back on it as cargo.

tion of galleys in an American-made airplane in a foreign country constitutes an *advancement in value* or *improvement in condition* of that plane for use in the foreign country such as would prevent duty-free reentry of the plane into the United States. *Air Carrier Supply Corp. et al.* v. *United States*, 44 CCPA 116, 119, C.A.D. 647 (1957). And while in the instant case plaintiff has undertaken on rehearing to present evidence to overcome procedural difficulties encountered in the case, it seeks affirmative relief without, however, meeting the substantive deficiencies in the case which have been highlighted by the evidence adduced on rehearing.

For the reasons stated the court finds that the decision and judgment heretofore entered in the case are in all respects proper and correct on the evidence and the law, and as such, will not be disturbed.