**AIR–SEA BROKERS, INC.**

v.

**UNITED STATES.**

C.D. 4742.
Court No. 75–4–00848.

United States Customs Court.

May 16, 1978.

Doherty & Melahn, Boston, Mass. (William E. Melahn, Boston, Mass., of counsel), for plaintiff.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., John N. Politis and Sidney N. Weiss, New York City, Trial Attys., for defendant.

FORD, Judge:

By this action, the court has before it for determination the issue as to whether certain electronic components exported from Belgium and Hong Kong are entitled to duty-free entry as American goods returned under item 800.00 of the Tariff Schedules of the United States.[1] Free entry is based upon whether Air-Sea Brokers, Inc., the plaintiff-importer of record (a licensed customhouse broker) has complied with the requirements for duty-free entry under the applicable statutes and regulations. Additionally, plaintiff has raised the issue of whether the doctrine of equitable estoppel may be invoked against the United States with respect to acts of certain customs employees.

The merchandise was entered at the port of Boston for the account of H. H. Scott, Inc., Maynard, Massachusetts. The entries were liquidated and all liquidated duties have been paid by plaintiff in behalf of Scott, now defunct. Scott is not a party to this action.

The merchandise was classified by Customs under one or more of the following provisions of the tariff schedules: Items 682.05, 682.60, 685.25, 685.90 or 686.10, schedule 6, part 5 of TSUS, which covers electrical machinery and equipment. In its brief plaintiff enumerated the aforesaid items and the applicable rates of duty seriatum without further description, correctly stating that the descriptions would not materially affect the disposition of the case.

Plaintiff by timely protest and summons claims it is entitled to entry free of duty under item 800.00 which provides:

SCHEDULE 8.—SPECIAL CLASSIFICATION PROVISIONS

Part 1.—Articles Exported and Returned

\* \* \* \* \* \* \*

Subpart A.—Articles not Advanced or Improved Abroad

\* \* \* \* \* \* \*

800.00 Products of the United States when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means while abroad. . . . Free

It is alleged by plaintiff that the involved merchandise consists of electronic parts which are the growth, produce, or manufacture of the United States which were exported from the United States to Belgium and Hong Kong and then returned to the United States without having been advanced in value or improved in condition by any process of manufacture while abroad. The parties are in agreement that at the time of entry, certain documents required

[1] At the trial counsel for both parties indicated that the primary issue was whether or not the Customs Service waived the requirements of documentation. Plaintiff's counsel raised the additional issue of estoppel. Briefs of both parties, however, are addressed to the duty-free issue.

by section 10.1 of the Customs Regulations (19 C.F.R. § 10.1), namely, the so-called foreign shippers declaration and a certificate of exportation, were not produced, and the merchandise was permitted conditionally free entry under bond to produce said documents. Additionally in its answer the Government avers the declaration of the owner, consignee, or agent on customs form 3311 was not produced for any of the involved entries. Plaintiff contends the district director of customs at Boston canceled the filing requirements of missing documents as evidenced by the remarks column of the entry papers; that the plaintiff-broker was notified of the cancellation by means of returned "Missing Document Receipts" (RC–1–24); that such cancellation approximately 1½ years prior to the date of liquidation-billing constituted a waiver of documentary requirements as permitted by section 10.1(d) of the Customs Regulations; that pursuant to this waiver, the entries should have been liquidated free of duty under TSUS item 800.00 as American goods returned.

Plaintiff further claims the action of the district director in canceling the documents indicated the district director was fully satisfied with respect to all documentary requirements. It is alleged that in the intervening period between the time of the cancellation and liquidation the actual importer, H. H. Scott, Inc., became financially distressed and was unable to pay its legal debts. Plaintiff maintains that in relying upon the action of cancellation by the district director it has been prejudiced by not being made aware of the claim of the district director until 1½ years after notice of cancellation and, as a result, was unable to obtain compensation for the monies paid on behalf of Scott. Plaintiff argues since it has substantially changed its position as a result of the district director's action, the latter should be estopped to disclaim the effect of his actions.

The Government denies the district director of customs canceled the requirements for missing documents as required by section 10.1 of the Customs Regulations and avers he canceled the bond plaintiff had posted for the late production of the documents. It is further contended the importer was informed through customs form 5561 that the Customs Service intended to assess duties on the three entries. A customs import specialist subpoenaed by plaintiff testified he had met with an officer of Air-Sea Brokers, Inc. and advised him that Customs was making the entries dutiable unless plaintiff came up with evidence which would warrant Customs changing its position and "making the entries either partially dutiable under 807 or some of the items free as returned American goods" (R. 65).

█ It is well settled law that free entry of merchandise as American goods returned is available to the importer only upon compliance with applicable regulations unless such compliance is waived. *Maple Leaf Petroleum, Ltd. v. United States*, 25 CCPA 5, T.D. 48976 (1937); *Dulien Steel Products, Inc., of Calif., W. J., Byrnes & Co., Inc. v. United States*, 40 Cust.Ct. 113, C.D.1969 (1958); *McDonnell Douglas Corp. v. United States*, 75 Cust.Ct. 6, 14, C.D. 4604 (1975), *decided on rehearing* 78 Cust.Ct. 92, C.D. 4692 (1977).

In *Maple Leaf Petroleum* our appeals court in considering paragraph 1615, Tariff Act of 1930, the predecessor provision to TSUS item 800.00, and article 392 of the Customs Regulations of 1931, which provided that certain documents be filed in connection with free entry of American goods returned, *held* that valid customs regulations made in pursuance of law have the force and effect of law and must be complied with as an act precedent to obtaining any special grant to which such regulations relate unless, in accordance with regulations, compliance therewith has been waived. The court made the following comment at 8–9:

> Appellant's argument to the effect that the collector knew all the facts, and that for this reason the establishment of the identity of the merchandise exported and imported in accordance with the regulations was therefore unimportant, is de-

void of merit. It has long been the sound policy of our Government that when such grants and privileges as those involved here were allowed in customs matters, they were granted only upon the condition that there should be a compliance with regulations to be prescribed by the Secretary of the Treasury. The party asking the special grant or favor, of course, would be required to make a showing of the essential facts required by the regulation to the collector at the time of entry and not in the way of evidence at some subsequent trial.

The applicable regulations of the Secretary of the Treasury for American goods returned were promulgated pursuant to several express provisions of TSUS notably general headnote 11, and headnote 1 to schedule 8, which provide:

General Headnotes and Rules of Interpretation

\*    \*    \*    \*    \*    \*

11. *Issuance of Rules and Regulations.*—The Secretary of the Treasury is hereby authorized to issue rules and regulations governing the admission of articles under the provisions of the schedules. The allowance of an importer's claim for classification, under any of the provisions of the schedules which provide for total or partial relief from duty or other import restrictions on the basis of facts which are not determinable from an examination of the article itself in its condition as imported, is dependent upon his complying with any rules or regulations which may be issued pursuant to this headnote.

*Schedule 8 headnote:*

1. The provisions of this schedule are not subject to the rule of relative specificity in headnote 10(c) of the General Headnotes and Rules of Interpretation, and, except as provided in headnote 3 to part 1 of this schedule, any article which is described in any provision in this schedule is classifiable in said provision if the conditions and requirements thereof and of any applicable regulations are met.

In support of its case, plaintiff called five witnesses and offered in evidence four exhibits, all of which were admitted. Defendant relied solely on documentary evidence, introducing four exhibits, two of which were admitted.

The exhibits received in behalf of plaintiff are the following:

*Exhibit 1:* Customs form RC–1–24, Missing Document Receipt, dated December 26, 1972. This exhibit indicates that the foreign shippers declaration and the certificate of exportation were missing with respect to entry No. 02469. The reason for issuance of this form is given as "Canceled."

*Exhibit 2:* Customs form RC–1–24, also dated December 26, 1972, contains information identical to exhibit 1 but relates to entry No. 03450.

*Exhibit 3:* Memorandum dated January 29, 1969, signed by C. J. Ahern, Assistant District Director of Customs (C&V), Boston, Mass., captioned "Missing Documents—Effective May 28, 1968."

*Collective exhibit 4:* Copies of customs form 5561, "Notice of Action and/or Request for Information." Notices are dated December 1, 1971, December 17, 1971 and December 12, 1972. The notice of December 17, 1971 states that it supersedes and cancels notice of action dated December 1, 1971.

The following exhibits were received in behalf of the defendant:

*Exhibit A:* Letter of April 2, 1971 from Air-Sea Brokers, Inc. to the district director. This exhibit attached to entry No. 03450, states in pertinent part that the merchandise consists of parts which had been sent to Syma International, S.A., the manufacturers' representative overseas for H. H. Scott, Inc., and while these parts were in the possession of Syma they were assembled in order to facilitate the repair of the H. H. Scott equipment. This same information had been furnished by letter dated January 29, 1971 covering entry No. 02469.

*Exhibit D:* Memorandum of December 3, 1971 from Air-Sea Brokers, Inc., to H. H.

Scott setting forth the estimated amount of duties on entry Nos. 02469, 03450 and 03895.

Defendant also introduced into evidence exhibits B and C for identification in order to establish the foreign origin of some of the assembled items. The documents and their purpose were described at the trial when the defendant's offer of proof was made:

> MR. POLITIS: Your Honor, these are documents submitted by the plaintiff to the Customs Service regarding certain electrical parts, capacitators, conductors and so on and on these particular data sheets which were submitted to the Customs Service, the plaintiff has indicated the country or origin as to some of the components. Some of them Japan, others Hong Kong and, the purpose of admitting these documents into evidence is to compare that to some of the items which are on this particular entry and to show that plaintiff was not entitled to 800 treatment as to the entry. That's the purpose of my offer of proof. * * * [R. 62.]

At the trial plaintiff's counsel objected to the introduction of the aforementioned exhibits on the grounds of relevancy and surprise. The court reserved ruling on their admission into evidence (R. 63).

Three of plaintiff's witnesses testified pursuant to subpoena: Barbara Hutchins, import specialist at the Boston district; Paul A. Leonard, import specialist and team leader, who was Mrs. Hutchins' supervisor; Ruth M. Mitchell, customs liquidator at Boston. The remaining two witnesses were James E. Francis, Jr., treasurer of plaintiff corporation, and Michael Mayzel, president of A & M Customs Brokers Company, located in Boston.

Exhibits B and C for identification consist of two letters dated September 23, 1970 to the district director at Boston, on the letterhead of Air-Sea Brokers, Inc. and bear the signature (without title) of J. E. Francis, Jr. Attached thereto are material cost sheets covering items stated to have been assembled in Hong Kong.

Plaintiff's objections, made either at the trial or in its briefs, claim the documents are not relevant; that plaintiff was prejudiced by surprise and denied an opportunity to question defendant's witnesses with respect to these exhibits at the time certain depositions were taken at the offices of plaintiff's counsel in Boston; that these documents were not produced pursuant to the court's discovery order entered on February 27, 1976; that the exhibits in issue referred only to one entry, i. e., entry No. 01252; that defendant did not lay a proper foundation to show that Mr. Francis had personal knowledge of the facts contained in the letters; that neither defendant's cross-examination of the witness at the trial nor defendant's offer of proof established personal knowledge of the contents with respect to the importations. Plaintiff further contends the exhibits are of limited evidentiary value.

The letters, written by plaintiff to Customs, are relevant inasmuch as the material cost sheets attached thereto show certain part numbers which are also found on the invoice for entry No. 01252. It is desirable that facts be adduced which might have a bearing on the issues before the court. The probative value of the evidence proffered outweighs any objections heretofore raised. Exhibits B and C for identification fall within the category of admissions which may be introduced into evidence.[2] These documents meet the criterion established by Rule 401, Federal Rules of Evidence, which defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence

---

2. See *W. T. Grant Company v. United States*, 38 CCPA 57, C.A.D. 440 (1950), wherein our appeals court in discussing the rules of evidence applicable in classification cases stated:

"Admissions by a party, of course, may be introduced into evidence against him by his party opponent. 4 Wigmore on Evidence (3d Ed.) Sec. 1048; 1 Jones on Evidence (4th Ed.) section 236."

**456**

admissible under the rules of evidence applicable in the courts of the United States are admissible in the Customs Court. Rule 10.4(a) of the rules of this court so provides. Accordingly, exhibits B and C for identification are admitted into evidence.

The regulations affecting classification of American goods returned are set forth in section 10.1(a) of the Customs Regulations. Basically, these regulations require documentation of the American origin of the importations by the importer at the time of entry, who is required to file (1) the foreign shipper's declaration, (2) the declaration of importer on customs form 3311, and (3) a certificate of exportation. None of these were filed.

■ Compliance with section 10.1(a) is mandatory and a condition precedent to recovery unless compliance has been waived or is impossible. *Maple Leaf Petroleum, Ltd. v. United States, supra; Mine Safety Appliances Company v. United States*, 36 Cust.Ct. 277, C.D. 1786 (1956). The basis for waiver of the required documentation is predicated on the district director being satisfied by the production of other evidence as to the American origin of the merchandise and its eligibility under TSUS item 800.00. If the district director is not satisfied, he cannot waive the documentation requirements of the regulations.

The record clearly shows the customs officials were not satisfied that all of the merchandise was of United States origin. They were also of the opinion that some assembly had taken place which would disqualify the entries from item 800 treatment. Those facts were conveyed to plaintiff.

Import specialist Hutchins, who had written the statements of appraisement and classification with respect to entry Nos. 03450 and 02469 and had done the preliminary background work in determining some of the components involved, with respect to entry No. 01252, testified that a customs inspector examined the merchandise. If he found evidence the goods were of foreign origin, she explained, there would be a notation to that effect. She found no such notation. Her testimony on cross-examination was that no country of origin was indicated:

A. 01252. There is a notation by the inspector that the country of origin was not indicated. On entry 03450, there is a notation, "Merchandise marked H. H. Scott, Inc. No country of origin indicated." And, on 02469 there is a notation of no evidence of country of origin. [R. 36–37.]

Mrs. Hutchins stated that she had made it clear to Mr. Francis of Air-Sea Brokers, Inc. that duties would be assessed on the three entries. The following colloquy with Government counsel ensued (R. 37–40):

Q. Now, you indicated also on direct examination that you had a conversation with Mr. Francis of Air-Sea Brokers, is that correct?—A. Yes, sir.

Q. During the course of your conversation, was it made clear to Mr. Francis by you that the duties would be assessed on these particular entries?

\* \* \* \* \* \*

THE WITNESS: Yes.

Q. And how do you recall this conversation that took place in the latter part of 1972?—A. The fact that he mentioned Congressional legislation to alleviate the problem of paying duties for a bankrupt company. I never heard of it before.

\* \* \* \* \* \*

Q. Now, in your conversation with Mr. Francis, did you indicate to him that duties would be assessed on these entries? —A. To the best of my recollection, yes.

\* \* \* \* \* \*

Q. And, of course, the 5561 was addressed to Air-Sea Brokers, the plaintiff in this case.—A. Yes.

Q. Was it in response to this form that Mr. Francis came and talked to you at a subsequent time?—A. Yes.

Q. Did you intend at any time to waive the requirement of the documentation?—A. No.

Import specialist Leonard testified that he had examined the three entries and was

familiar with them and had rejected the claim for entry under item 800.00. As to entry No. 01252, which he handled, he stated the word "Japan" was listed after certain of the parts indicating "that when Mrs. Hutchins checked the invoice with a printout sheet that was made by Air-Sea Brokers to a previous import specialist that that particular part number is, by his admission, of Japanese origin" (R. 56). The witness identified exhibits B and C, which were submitted to the Customs Service by the importer, as documents kept in his office in the ordinary course of business in the customhouse. He described the purpose of the documents as follows:

> * * * a duplication of similar built merchandise where they were disclosing certain components in the assembly to be of foreign origin as well as U.S. components. [R. 58.]

Mr. Leonard further testified that notations on the invoices with respect to assembly costs for certain components indicated the goods were improved or advanced and, therefore, were not entitled to "800 treatment."

On cross-examination Mr. Leonard stated he had possibly two conversations with Mr. Francis, one in December 1972. One of the conversations resulted from Customs sending a notice of action form (form 5561). The pertinent portion of the record reads as follows:

> Q. Can you recall the essence of the conversation you had with Mr. Francis?— A. Mr. Francis asked if it was Customs' intention to make the entries dutiable and we said we were making it dutiable unless he came up with evidence that would warrant us changing our minds and making the entries either partially dutiable under 807 or some of the items free as returned American goods. We would need documentation and evidence.

> Q. Did Mr. Francis indicate to you whether or not he could provide that documentation?—A. He said he was not concerned because of some Congressional legislation that was going to be put forth

and, based on that, we decided we would go forward with our action.

> * * * * * *

> Q. And did you tell Mr. Francis that the Customs Service was going to assess duties on these entries?—A. With the 5561 we told him that it was going to be made dutiable and when he came into the office and told us that he could no longer get any more documentation or evidence and that he was going to go through another source, Congressional legislation, we just said we will go ahead with our action. We wanted to give him as much opportunity as possible to provide the evidence of documentation. [R. 65–66.]

■ The record further shows it was the opinion of customs brokers Francis and Mayzel that when the word "Canceled" is set forth on a missing document receipt it indicates there is nothing further to do. Both stated if Customs was going to assess duty it should have added a notation of noncompliance, duty to be assessed, to customs form RC–1–24. Admittedly, Customs violated its own regulations in this respect. Import specialist Hutchins and her supervisor, Paul Leonard, conceded the forms were incorrectly filled out and should have included the additional language "Duty Assessed—Noncompliance CR" as required by the customs district of Boston in its regulations pertinent to waiver of documents. (Exhibit 3.) In light of the record presented the court can in no way construe the actions of the customs officials to be a waiver. It is clear Customs did not intend to waive the required documents, inasmuch as it was not satisfied the merchandise was of American origin and had not been advanced in value while abroad.

■ The mere fact plaintiff was a customs broker and not the actual importer of the merchandise and, as such, would not possess firsthand knowledge of the facts concerning the importations, does not of itself sanction the free entry of so-called American goods without the production of other satisfactory evidence as to the identity thereof. See *Madeline Britton, V. A. Lessor & Co. v. United States*, 29 Cust.Ct.

314, C.D. 1485 (1952) on the issue of impossibility of compliance with mandatory customs regulations.[3]

Plaintiff has not satisfied the documentary requirements of section 10.1 of the Customs Regulations. Compliance was neither waived by the customs officials nor did plaintiff establish impossibility of compliance. The regulations require the district director be satisfied as to the American origin of the merchandise, and plaintiff cannot create a right of recovery that does not exist by invoking the doctrine of equitable estoppel.

On the record before us, it appearing the district director was not satisfied the merchandise was entitled to free entry under TSUS item 800.00, this action must be dismissed.

Judgment will be entered accordingly.

---

**3.** That case discusses an extreme situation. Evidence had been adduced for the purpose of establishing that goods claimed to have been of American manufacture were imported through the same port as exported. Export records purported to have been filed at the customhouse had been destroyed. The court held that impossibility of compliance did not of itself sanction free entry of the merchandise.