AIR–SEA BROKERS, INC., Appellant,

v.

The UNITED STATES, Appellee.

Appeal No. 78–13.

United States Court of Customs and Patent Appeals.

April 5, 1979.

William E. Melahn, Doherty & Melahn, Boston, Mass., attorneys of record, for appellant.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., David M. Cohen, Acting Director, Commercial Litigation Branch, Joseph I. Liebman, Sidney N. Weiss, New York City, for the United States.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE,* and MILLER, Judges.

MILLER, Judge.

This is an appeal from the decision and judgment of the United States Customs Court reported at 454 F.Supp. 451, 80 Cust.Ct. 102, C.D. 4742 (1978), which dismissed appellant's action seeking reliquidation of three entries of certain electronic components and their duty-free entry as American goods returned under item 800.-00 [1] of the Tariff Schedules of the United States ("TSUS"). We affirm.

* Judge Lane took no part in the decision.

1. Item 800.00 provides as follows:

SCHEDULE 8.—SPECIAL CLASSIFICATION PROVISIONS

Part 1.—Articles Exported and Returned

Subpart A.—Articles not Advanced or Improved Abroad

\*　　\*　　\*　　\*　　\*　　\*

800.00 Products of the United States when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means while abroad. ...... ... ..... ..... Free

## Background

The merchandise was imported at the port of Boston during 1971 by appellant, a licensed customhouse broker and the importer of record, for the account of H.H. Scott, Inc. Scott, alleged by appellant to be bankrupt, is not a party to the action. The merchandise was classified under various provisions of schedule 6, part 5 of the TSUS, with duties varying from 7 to 12.5 percent.

For goods to be accorded duty-free treatment under item 800.00, the importer is required by 19 CFR 10.1(a) to file various documents.[2] Appellant never filed the required documents because, it alleges, the Customs Service waived the documentary requirement when it issued a "Missing Document Receipt" (referred to as a Form RC–1–24) with the word "Cancelled" inserted after "Reason for this Slip." Although the two RC–1–24's of record[3] were issued on December 26, 1972, the liquidation did not occur until May 1974, at which time appellant paid the duties. Appellant asserts that, during the intervening period, Scott was adjudicated a bankrupt in federal district court, and by the time of liquidation it was too late to file a claim in bankruptcy for the duties paid in Scott's behalf; further, that by the actions of the Customs Service, the United States is equitably estopped from denying the merchandise duty-free entry under item 800.00.

2. There is a dispute between the parties over which version of the rule is applicable. Appellee contends that since the entries were made in 1971, the 1971 version is applicable. Appellant contends that since the alleged waiver of documentation occurred in December 1972, the 1972 version, as amended by T.D. 72–119, 6 Cust.Bull. 209 (1972), is applicable. We do not need to resolve this dispute since both versions of 19 CFR 10.1(a) require the following documents to be filed: (1) a declaration by the foreign shipper, (2) a declaration by the owner, importer, consignee, or agent on Customs form 3311, and (3) a certificate of exportation executed by the district director at the port from which the merchandise was originally exported.

3. We note that the record includes an RC–1–24 form for only two of the three entries involved in this appeal.

## Customs Court

The Customs Court noted that compliance with the documentary requirement of 19 CFR 10.1(a) is mandatory and a condition precedent to recovery unless compliance has been waived, citing *Maple Leaf Petroleum, Ltd. v. United States,* 25 CCPA 5, T.D. 48976 (1937); also, that the basis for such a waiver is the satisfaction of the district director [4] by the production of evidence that the merchandise is of American origin. Based on the record,[5] the court found that the Customs Service did not intend to waive filing of the required documents since the district director was not satisfied that the merchandise was of American origin and had not been advanced in value while abroad. Regarding appellant's contention of equitable estoppel, the court simply said that "plaintiff [appellant] cannot create a right of recovery that does not exist by invoking the doctrine of equitable estoppel."

## OPINION

Appellant argues that because the procedures to be followed by import specialists at the Boston district call for issuance of an RC–1–24 marked with the word "Waived" or "Cancelled" if the documentary requirement is to be waived, receipt by appellant of the RC–1–24's with the word "Cancelled" on them constituted a waiver, irrespective of the actual intent of the district director.

■■ Whether or not a waiver of the documentary requirement occurred is a question of fact, and we have said that our inquiry regarding a finding of fact by the Customs Court "is limited to whether the finding is without evidence to support it or is clearly contrary to the weight of the evidence." *Artmark Chicago Ltd. v. United States,* 558 F.2d 600, 602, 64 CCPA 116, 119, C.A.D. 1192 (1977). Based on the record

before us, we are satisfied that there is sufficient evidence to support the Customs Court's finding that there was no waiver of the documentary requirement. The receipt of the RC–1–24's by appellant, while important, is not conclusive and must be considered in light of all the evidence. Appellant was notified orally that the Customs Service was not satisfied that the merchandise was of American origin; and, at least two weeks prior to issuance of the RC–1–24's, appellant received various notices (form CF 5561, no longer in use) indicating that duties were to be assessed. Although one of appellant's witnesses (a customs broker), when asked to give his opinion regarding the RC–1–24's in question, stated that if further duties were to be assessed the form should have been marked with "Custom Regulation, Noncompliance, duty to be assessed," the witness also stated that the term "Cancelled" meant that the *bond* was cancelled.

Thus, it appears that while the RC–1–24's were probably incorrectly filled out by the Customs Service (since further duties were to be assessed), the use of the term "Cancelled" is ambiguous and could mean that the *bond* was cancelled. Also, we note that the two RC–1–24's of record only mention two documents (the foreign shipper's declaration and the certificate of exportation) of the required three documents.[6] We note further the testimony by an import specialist for the Customs Service that when he told appellant's treasurer that the merchandise would be dutiable unless he could produce the required documentation, the treasurer replied that he was looking to legislation by Congress to obtain relief. Accordingly, we conclude that appellant either knew or should have known that the Customs Service was not waiving the documentary requirement.

4. As pointed out *supra* note 2, there is a dispute over which version of the rules is applicable. Again, this dispute need not be resolved since both versions permit waiver of some or all of the documents if someone—the district director in the 1972 version, the collector in the 1971 version—is satisfied that the merchandise meets the requirements of item 800.00.

5. This consists of the testimony of five witnesses called by appellant, four exhibits introduced by appellant, and four exhibits introduced by appellee.

6. The third is the declaration of the importer on *Customs form 3311.*

Appellant next argues that under the doctrine of equitable estoppel the United States is estopped from assessing duties on the merchandise. It premises this argument on the points that the RC-1-24's (with the word "Cancelled") were issued by persons authorized to act, that it was reasonable for appellant to rely on these documents, and that it was damaged as a result of such reliance because it is barred from filing a claim in the H.H. Scott, Inc. bankruptcy proceeding.

The Government presents these arguments: (1) that under *Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947), a case never overruled by the Supreme Court, the United States can *never* be equitably estopped; (2) that even in cases which incorrectly applied equitable estoppel, the United States was not estopped in its sovereign capacity (as distinguished from its proprietary capacity); and (3) that even assuming equitable estoppel is applicable in this case, appellant has not satisfied the requirements for equitable estoppel.

■ Although the *general* rule has been that equitable estoppel cannot be invoked against the United States, the rule does not appear to be as absolute as the government contends. The Supreme Court did, in *Federal Crop Insurance Corp. v. Merrill, supra,* indicate in a general way that the United States cannot be estopped; but, not long afterwards, in *Moser v. United States,* 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729 (1951), the Court, although saying it was unnecessary to apply estoppel against the United States, nevertheless granted relief in a naturalization case. From this and dicta in the subsequent case of *Montana v. Kennedy,* 366 U.S. 308, 81 S.Ct. 1336, 6 L.Ed.2d 313 (1961), it seems that the general rule, if it still exists, is subject to exception. Appel-

lant has cited *Emeco Industries, Inc. v. United States,* 485 F.2d 652, 202 Ct.Cl. 1006 (1973), and a line of Ninth Circuit cases, representative of which is *United States v. Georgia Pacific,* 421 F.2d 92, (9 Cir. 1970), for the proposition that equitable estoppel can be invoked against the United States.[7]

■ Granting the validity of that proposition, it is subject to the limitation that "equitable estoppels may [only] be found against the Government . . . if the Government is acting in its proprietary rather than sovereign capacity." *United States v. Georgia Pacific, supra* at 100. When acting in its sovereign capacity, the Government is acting for the benefit of the general public—a role clearly embracing the collection or refund of duties on imports. Accordingly, we hold that equitable estoppel, even if available in cases involving the Government in its proprietary capacity, is not available against the Government in cases involving the collection or refund of duties on imports.[8]

Accordingly, it is unnecessary to reach the issue of whether, if equitable estoppel were available against the Government, appellant has satisfied the requirements for asserting it.

In view of the foregoing, the judgment of the Customs Court is *affirmed.*

---

7. While these cases may indicate a trend, we note that the Second Circuit has declined to follow the Ninth Circuit. *Goldberg v. Weinberger,* 546 F.2d 477 (2d Cir. 1976), *cert. denied,* 431 U.S. 937, 97 S.Ct. 2648, 53 L.Ed.2d 255 (1977).

8. The rule in tax cases, clearly another area where the United States is acting in its sovereign capacity, is that "[t]he doctrine of equitable estoppel is not a bar to the correction by the Commissioner of a mistake of law." *Automobile Club of Michigan v. Commissioner,* 353 U.S. 180, 183, 77 S.Ct. 707, 709, 1 L.Ed.2d 746 (1957).