ST. PAUL FIRE AND MARINE INSURANCE CO., PLAINTIFF *v.*
UNITED STATES OF AMERICA, DEFENDANT

Court No. 82–08–01099

(Decided August 21, 1997)

*Sandler, Travis & Rosenberg, P.A. (Andrew M. Parish* and *Edward M. Joffe)* for the plaintiff.
*Frank W. Hunger,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice *(Kenneth N. Wolf, Barbara M. Epstein* and *Amy M. Rubin)* for the defendant.

MEMORANDUM AND ORDER

AQUILINO, *Judge:* The defendant has interposed a motion for summary judgment, dismissing this long-pending action, the background of which has already been developed and reported in this and other courts *sub nom. United States v. Int'l Citrus of Canada, Inc.,* Cr. 81–00094 (W.D.N.Y. 1982) (plea agreement), and *United States v. Blum,* 11 CIT 316, 660 F.Supp. 975 (1987), *rev'd,* 858 F.2d 1566 (Fed.Cir. 1988).

I

As determined in those actions, one Joseph Blum, president and controlling officer of International Citrus of Canada, Inc. ("ICC"), caused shipments of orange-juice concentrate to be entered duty free as "U.S. goods returned" under item 800.00 of the Tariff Schedules of the United States ("TSUS"). However, the U.S. Customs Service came to conclude that those entries were not entitled to such benefit since the concentrate

---

[115] Esserman Prelim. Inj. Test., Hr'g Exs. and Docs., Vol 2, Tab 38 at 235–237.
[116] *Id.* at 235–6.

had been commingled with juice from Brazil in Florida for export to Canada, which resulted in drawback prior to return to this country. A multi-count criminal indictment was thereafter filed against ICC and Mr. Blum in the U.S. District Court for the Western District of New York, which ultimately accepted a plea of guilty to some of the charges. *See* 11 CIT at 316–17, 660 F.Supp. at 976.

Having recovered a fine on those counts, the government sought civil penalties and a duty of 35 cents per gallon via its complaint in the latter matter, which had been brought pursuant to 19 U.S.C. §1592 and 28 U.S.C. §1582 against Mr. Blum and also against E.C. McAfee & Co., an importer of record, and St. Paul Fire and Marine Insurance Company, as surety, for the unpaid duties. Upon the government's appeal from this court's dismissal of its complaint as against those two "innocent" companies, the Federal Circuit reversed, holding that 19 U.S.C. §1592(d)

> provides the United States with a cause of action to recover duties from those parties traditionally liable for [them], *e.g.*, the importer of record and its surety.

858 F.2d at 1570.

The amended complaint filed herein by the surety St. Paul prays for judgment declaring, among other things, that the merchandise was in fact classifiable under either TSUS item 800.00 or item 804.20 and that it had no obligations under any bond for any of the entries involved and therefore that the duties paid[1] should be refunded. This relief is premised upon two alleged causes of action to the effect that item 800.00 did apply. A third count of plaintiff's amended complaint pleads in the alternative that the merchandise was entitled to duty-reduced entry pursuant to TSUS item 804.20, while another avers that by allowing

> duty-free entry, the Defendant breached its contractual obligations with the surety to determine at the time of entry whether the importer's merchandise qualified for [such] treatment * * * and whether the importer was otherwise satisfying all other legal requirements for entry.[2]

## A

In conformity with CIT Rule 56(i), the defendant presents with its motion for summary judgment a concise statement of material facts as to which it contends there is no genuine issue to be tried. They are simply stated to be that (1) neither the importer nor any other person filed the documents required by Customs regulation to establish entitlement to free entry under the TSUS; (2) the Service did not waive their filing; and (3) the bond and the rider executed by the plaintiff and delivered to Customs speak for themselves. This statement is accompanied by an affidavit of a Service import specialist at the port of Buffalo, New York, de-

---

[1] Following the decision by the court of appeals in the action brought pursuant to section 1592, this court afforded the parties time for discovery, which led to a stipulated conclusion of that matter against defendant St. Paul *et al*.

[2] Amended Complaint, para. 46. The plaintiff has abandoned its final, fifth alleged cause of action, sounding in collateral estoppel.

tailing his knowledge of the entries in question and confirming lack of receipt of the documentation required at the time by 19 C.F.R. §10.1.

In its papers in response, the plaintiff does not deny defendant's non-receipt, but it does submit a statement regarding investigation of ICC by Customs before the entries occurred. And the statement, as well as a supporting affidavit, also represent:

> 19. The practice in the port of Buffalo since the early 1960s concerning documents for duty free treatment and missing documents in general differs from other ports. In Buffalo, a missing document bond is never required at the time of entry. If the Customs Service later wants a document such as a 3311, a * * * Document Request Form [ ] is sent to the broker, and the missing document bond is required at that time. * * *
>
> 20. For the International Citrus entries, Customs never required that a form 3311 be filed at the time of the filing of the entry papers. At no time after entry did Customs ever send a Document Request Form to the broker or importer of record concerning these entries. Finally, at no time after entry did the Customs Service ever demand that 3311s be filed for the entries involved here. * * *[3]

Moreover, the plaintiff attempted discovery via production of documents, written interrogatories and depositions, which the court has stayed upon defendant's motion therefor, pending determination of the motion at bar for summary judgment.

Of course, such a motion can only be granted if the papers filed show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. CIT Rule 56(d). *Cf. Washington Int'l Ins. Co. v. United States*, 18 CIT 654 (1994), *aff'd*, 60 F.3d 843 (Fed. Cir. 1995); *Nobelpharma U.S.A. Inc. v. United States*, 21 CIT 47, 955 F.Supp. 1491 (1997). While the "evidence must be viewed in a light most favorable to the nonmovant and all reasonable inferences must be drawn in the nonmovant's favor"[4],

> a nonmovant must do more than merely raise some doubt as to the existence of a fact; evidence must be forth-coming from the nonmovant which would be sufficient to require submission to the jury of the dispute over the fact.

*Avia Group Int'l, Inc. v. L.A. Gear Calif., Inc.*, 853 F.2d 1557, 1560 (Fed.Cir. 1988). *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

This has not occurred herein, which the court concludes is the result of the dispositive issues' being essentially legal in nature, as discussed

---

[3] St. Paul's Statement of Material Facts in Issue, pp. 6–7. *See* Affidavit of Erstin Clark McAfee, paras. 2, 3.

[4] *Avia Group Int'l, Inc. v. L A Gear Calif., Inc.*, 853 F.2d 1557, 1560 (Fed Cir. 1988), citing *United States v. Diebold*, 369 U.S. 654, 655 (1962); *Interpart Corp. v. Italia*, 777 F.2d 678, 681 (Fed.Cir. 1985); *Petersen Mfg. Co. v. Central Purchasing, Inc.*, 740 F.2d 1541, 1546 (Fed.Cir. 1984).

hereinafter. That is, this action can be decided by way of summary judgment.

## II

Jurisdiction to grant such relief is predicated upon 28 U.S.C. §§ 1581(a), 2631(a) and 2643(c)(1).

## A

Plaintiff's amended complaint shows that Customs classified the imported merchandise under item 165.35, TSUS ("Fruit juices, including mixed fruit juices, * * * whether or not sweetened: * * * Citrus fruit: * * * Other: * * * Concentrated * * * 35¢ per gal."). The alternative classfication prayed for in counts I and II, per item 800.00, is as follows:

> Products of the United States when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means while abroad * * * Free[.]

The amended complaint avers that juice at issue herein satisfied the requirements of this section.

Even if true, however, this allegation does not indicate relief for the plaintiff, which does not show compliance with the procedures established by the Service for such treatment. They were set forth at length in part 10 of Title 19, C.F.R., primarily in section 10.1 thereof, including:

**Domestic products; requirements on entry.**

> (a) Except as otherwise provided for in this part, the following documents shall be filed in connection with the entry of articles claimed to be free of duty under item 800.00 * * *, T[SUS]:

> > (1) A declaration by the foreign shipper * * * if the value of the returned articles exceeds $1,000 * * * that * * * the articles * * * specified are products of the United States; that they were exported from the United States, from the port of _____ on or about _____, 19__; that they are returned without having been advanced in value or improved in condition by any process of manufacture or other means.

> > ＊　　　＊　　　＊　　　＊　　　＊　　　＊　　　＊

> > (2) A declaration for free entry by the owner, importer, consignee, or agent on the top portion of Customs Form 3311.

> > (3) A Certificate of Exportation on the bottom portion of Customs Form 3311 executed by the district director at the port from which the merchandise was exported. Such certificate shall show whether drawback was claimed or paid on the merchandise covered by the certificate and, if any was paid, the amount thereof. This certificate shall be issued on application of the importer, or of the district director at the importer's request, and shall be mailed by the issuing officer directly to the port at which it is to be used. If the merchandise has been exported from the port at which entry is made and the fact of exportation appears on the records of the customhouse, the fact

of re-importation shall be noted on such export record. In such case the filing of the certificate on Customs Form 3311 shall not be required.

(b) If, in any case where the appraising officer's report does not show definitely that merchandise the value of which exceeds $1,000 is of domestic origin, Customs Form 3311 has not been executed by the owner or ultimate consignee, the district director may require the execution of such form by the owner or ultimate consignee. In such a case Customs Form 3311 shall be filed within 3 months after the date of the demand therefor upon the person in whose name the entry was filed. * * * In the case of articles which are unquestionably the products of the United States and which have not been advanced in value or improved in condition, if the district director is satisfied from the character thereof or otherwise that they are free of duty under Schedule 8, Part I, T[SUS], and if the total value of the articles of American origin contained in the shipment does not exceed $250, the execution of Customs Form 3311 shall not be required therefor * * *.

*      *      *      *      *      *      *

(d) If the district director is reasonably satisfied, because of the nature of the articles, or production or other evidence, that the articles are imported in circumstances meeting the requirements of item 800.00 * * * and the related headnotes, he may waive the requirements for producing the documents specified in paragraphs (a) and (b) of this section * * *.

The burden of compliance with these terms and conditions rests, and always has rested, on the importer, not Customs. And the courts have not held otherwise. *See, e.g., Southern Air Transport, Inc. v. United States*, 84 Cust.Ct. 7, 10, C.D. 4836 (1980); *McDonnell Douglas Corp. v. United States*, 75 Cust.Ct. 6, 14, C.D. 4604 (1975). The plaintiff claims that a declaration by the foreign shipper was filed for each of the entries and that a Certificate of Exportation was not required. Plaintiff's Brief, p. 10. It also reiterates that

Customs never required that a form 3311 be filed at the time of the filing of the entry papers. At no time after entry did Customs ever reject any of these entries for not conforming to the regulations or for any other reason. Moreover, at no time after entry did the * * * Service ever demand or require CF 3311s for these entries.

*Id.* at 7.

These contentions draw upon an affidavit provided by the president of E.C. McAfee & Co., as ICC's customs broker. On its part, the defendant has submitted a lengthy affidavit, sworn to by the Service's import specialist responsible for the Buffalo entries at issue. Among other things, he attests that the documentation submitted by McAfee "did not satisfactorily fulfill the requirements of 19 CFR 10.1 and, thus, was not considered adequate support of the claim that [the] orange juice was of U.S.

origin."[5]; that he thereupon sent a Request for Information, Customs Form 28 ("CF 28")[6] to the importer(s), asking for "specific documentation to substantiate the claim that the merchandise entered * * * was of U.S. origin, in accordance with 19 CFR 10.1"[7], and warning that "failure to furnish a completed response could result in [ ] notification that the [ ] entries, as well as future entries, would be classified under item 165.35"[8]; that the information requested by the CF 28 was not provided[9] and that the information which had been supplied did not meet the requirements of the above regulation[10]; that no such information has been provided in connection with St. Paul's protest herein[11]; and that since denial of that protest

> none of the documents required by 19 CFR §10.1 has been submitted by I[CC] or any other person. Had any further information been submitted to the port of Buffalo regarding the orange juice entries in question, from the dates of entry to the present, such information would have been sent directly to me or, if sent to anyone else at the port, would have been brought to my attention by the individual receiving it.[12]

Given such failure to satisfy the mandatory administrative conditions precedent, plaintiff's attempted reliance on the proposition that subsequent discovery during the judicial process could be a substitute[13] is of no moment. As the court in *Air-Sea Brokers, Inc. v. United States*, 80 Cust.Ct. 102, C.D. 4742, 454 F.Supp. 451 (1978), *aff'd*, 596 F.2d 1008, C.A.D. 1222 (CCPA 1979), for example, has held:

> Compliance with section 10.1(a) is mandatory and a condition precedent to recovery unless compliance has been waived or is impossible. * * * The basis for waiver of the required documentation is predicated on the district director being satisfied by the production of other evidence as to the American origin of the merchandise and its eligibility under TSUS item 800.00. If the district director is not satisfied, he cannot waive the documentation requirements of the regulations.

80 Cust.Ct. at 108, 454 F.Supp. at 456 (citations omitted). And the responsible Customs officer attests in this regard:

> At no point did the * * * [S]ervice waive production of the documents required to be filed by 19 CFR 10.1 in support of the claim that the merchandise in question was of U.S. origin. Had anyone on

---

[5] Affidavit of David G. Hise, para. 6.

[6] *See id.*, para. 7 and Exhibit 2.

[7] *Id.*, para. 7.

[8] *Id. See id.*, Exhibit 2, first page.

[9] *Id.*, para. 10.

[10] *Id.*, para. 14. *Cf. id.*, paras. 6, 8, 9, 11–13 and Exhibits 1, 3, 5 and 6 in regard thereto.

[11] *See id.*, para. 15.

[12] *Id.*, para. 16.

[13] *Cf.* Plaintiff's Reply in Opposition to the Government's Supplemental Brief [hereinafter cited as "Plaintiff's Reply"], pp. 1–3.

my team or anyone else at the port of Buffalo waived such production, I would have been aware of it.[14]

The first two counts of plaintiff's amended complaint are based upon the premise that Customs denied duty-free entry because the juice had been exported with the benefit of drawback pursuant to 19 U.S.C. §1313. *See* Amended Complaint, paras. 19, 28. The plaintiff in Count I denies any receipt of drawback, while an averment in the second count is to the effect that the "Service paid drawback to Citrus World in connection with certain of its exportations of fruit juice concentrate"[15], but that

> such payment * * * was not accomplished in connection with the imported merchandise which is the subject of the instant complaint.

*Id.*, para. 31. Count III takes the opposite tack, to wit, "the subject merchandise was previously exported from the United States with the benefit of drawback"[16], in praying for classification under item 804.20, TSUS. The parties agree that this section entitled importers to a one percent reduction of the duty on merchandise previously exported from the United States with the benefit of drawback if it was the product of this country returned without having been advanced in value or improved in condition by any process of manufacture or other means while abroad. *Compare id.*, para. 38 *with* defendant's Answer, para. 38. The defendant does not agree, however, that the plaintiff is entitled to this relief. Rather, it points out that, in order to be classifiable under item 804.20, the merchandise had to have been such as would qualify for duty-free treatment under item 800.00 but for the operation of Headnote 1 to TSUS Schedule 8, Part 1, Subpart A.[17] It thus argues that, since failure to satisfy the requirements of 19 C.F.R. §10.1, *supra*, was the reason for lack of qualification under item 800.00, not this headnote, the merchandise "is not provided for under item 804.20, TSUS." Defendant's Brief, p. 14. The court concurs, there being no attempt by the plaintiff to point to any other possible predicate.

Hence, to summarize the foregoing discussion, the court concludes that none of plaintiff's first three pleaded causes of action states a claim upon which relief can be granted.

### III

To quote further from its fourth alleged cause of action, the plaintiff claims that Customs

> breached its contract by repeatedly permitting the subject merchandise to be imported duty-free despite its knowledge that the goods did not qualify for this preferred treatment. * * *

---

[14] Affidavit of David G. Hise, para. 17. The court notes in passing that the papers at bar do not indicate valuation of the entries at less than $1,000, thereby implicating 19 C.F.R. §10.1(b), *supra*.

[15] Amended Complaint, para. 30. The defendant originally pleaded lack of information in response to this allegation. It now moves to amend its answer to admit the averment, which motion is hereby granted.

[16] Amended Complaint, para. 39.

[17] This headnote, in part, precluded classification under item 800.00 of any article exported with the benefit of drawback.

47. As a direct result of these breaches, Plaintiff is not liable under any of the bonds for any duties or other exactions, penalties, taxes and/or damages. Moreover, Plaintiff is entitled to a refund of any and all duties previously paid in connection with the importation involved here.

Amended Complaint, paras. 46, 47. It posits two theories in support of its position.

### A

The first is that the Service's standing as a third-party beneficiary of the bond has been undermined by the importer's criminal and/or fraudulent activity. That is, any

defense arising in connection with the formation of that contract, such as fraud in the inducement or lack of mutual assent, is available to the promisor against the beneficiary.

Plaintiff's Reply, p. 5. The plaintiff claims that "Customs personnel believed as early as May 22, 1980 that the entries * * * were fully dutiable" based upon ICC's being "involved in a systemic and long-standing fraud." *Id.* at 6. It quotes from section 124(1) of the *Restatement (First) of Law of Security* that where

before the surety has undertaken his obligation the creditor knows facts unknown to the surety that materially increase the risk beyond that which the creditor has reason to believe the surety intends to assume, and the creditor also has reason to believe that these facts are unknown to the surety and has a reasonable opportunity to communicate them to the surety, failure of the creditor to notify the surety of such facts is a defense to the surety.

The plaintiff thus argues that, when the Service determined that it could not or would not disclose what it knew about ICC, it was "not entitled to accept the obligation of the surety." *Restatement (First) of Law of Security* §124 *Comment d* (1941). *See also Restatement (Third) of Law Suretyship & Guaranty* §§ 12, 47 (1995).

The defendant takes the position that the circumstances herein do not warrant recovery by the surety. And the court concludes that this position is well-founded. To begin with, the bond itself does not provide for nonpayment of duties if the importer fails to pay due to misconduct or otherwise. Secondly, while it has been held that a creditor "who, during negotiations, actively and fraudulently conceals pertinent facts cannot then turn to the surety for reimbursement"[18], this is not indicated herein. As the Supreme Court has long held, a surety which desires information must ask for it, for the creditor "is not bound to volunteer it." *Magee v. Manhattan Life Ins. Co.*, 92 U.S. 93, 99 (1875). There is no showing that St. Paul made any such request, or that Customs was possessed of anything more than suspicion prior to the entries herein and enforcement steps it thereupon took. To the extent the Service had actu-

---

[18] *St. Paul Fire & Marine Ins. Co. v. Community Credit Corp.*, 646 F.2d 1064, 1073 (5th Cir. 1981).

al knowledge beforehand, the court concludes that it would have been developed within the purview of ongoing law-enforcement investigation and therefore not required to be disclosed. *Cf.* 5 U.S.C. §552(b),(c); 19 C.F.R. §103.13 (1980). Indeed, disclosure of any such knowledge by Customs could have run afoul of the criminal code. *See* 18 U.S.C. §1905. In sum, the defendant was not obligated to disclose to the plaintiff what it knew. As the Court in *Magee* opined, a surety

> must not rest supine, close his eyes, and fail to seek important information within his reach. If he does this, and a loss occurs, he cannot, in the absence of fraud on the part of the creditor, set up as a defence facts first learned which he ought to have known and considered before entering into the contract.

92 U.S. at 98. *Cf. St. Paul Fire & Marine Ins. Co. v. United States*, 16 CIT 984, 807 F.Supp. 792 (1992).

## B

The plaintiff also claims that the Service breached express statutory and regulatory conditions of the bond by failing to (1) have the importer deposit estimated duties sufficient to cover its entries pursuant to 19 U.S.C. §1505(a) and 19 C.F.R. §141.103 or, alternatively, (2) obtain at the time of entry Form 3311s or require the posting of a missing document bond.[19] In support of its claim that St. Paul's bond is statutory, the plaintiff relies on *Old Republic Ins. Co. v. United States*, 10 CIT 589, 645 F.Supp. 943 (1986), which in turn referred to *United States v. DeVisser*, 10 F. 642, 648 (S.D.N.Y. 1882), wherein the court had pointed out that a bond

> must be interpreted in reference to the statutes and regulations in force * * *; and insofar as any * * * are found to modify the ordinary rights of suretyship in a bond * * *, they are controlling * * * in this sense, and to this extent, statutes and regulations which are designed to affect the rights of parties to the contract must be regarded as parts of the contract.

In holding sections 113.44(a) and 159.12(b) of Title 19, C.F.R., relating to extension of time and notice thereof, to be parts of the bond therein, the opinion in *Old Republic* reiterated that a court must inquire whether such provisions of law create any obligation of the government to the surety or whether they are merely directory. 10 CIT at 600, 645 F.Supp. at 953, citing *DeVisser*, 10 F. at 647. Here, the plaintiff takes the position that the requirements of law breached by the importer, as spelled out above, were for its benefit.

---

[19] Plaintiff's Reply, p. 11. St. Paul's Rider R to Immediate Delivery and Consumption Entry Bond not only required the principal to "deposit the duties and taxes * * * estimated to be due thereon" in accordance with 19 U.S.C. §1505(a) but also to

> file with the appropriate customs officer the documentation required by law to enable [him] to (1) determine whether the merchandise may be released from customs custody, (2) properly assess duties on the merchandise, (3) collect accurate statistics with respect to the merchandise, and (4) determine whether any other applicable lawful requirements are met * * *.

Defendant's Exhibit A, pp. 1–2.

On its part, the defendant is of the view that, to

> the extent that the bond in issue may be considered a "statutory bond," required by and created pursuant to the provisions of 19 U.S.C. §§66 and 1623, and of 19 C.F.R. §§113.14(g)(2), 142.4(a)(2) and 142.5, those provisions may be "read into the bond."[    ] However, nothing alleged by plaintiff may be considered a breach of the statutory provisions read into the bond.

Defendant's Brief, p. 29 (footnote ommitted). The defendant refers to *Washington Int'l Ins. Co. v. United States*, 16 Cl.Ct. 663, *aff'd*, 889 F.2d 1101 (Fed.Cir. 1989), in which the surety sued the government for refund of monies paid and for liquidated damages with regard to single entry bonds issued to the importer. The Claims Court held that the surety had "neither subrogation rights against * * * nor privity with Customs." 16 Cl.Ct. at 669–70. Even if privity were assumed, the court concluded that the plaintiff failed to state a claim since the bonds never expressly incorporated the pertinent Customs regulations. *Id.* at 669, citing *Nutt v. United States*, 12 Cl.Ct. 345 (1987), *aff'd sub nom. Smithson v. United States*, 847 F.2d 791 (Fed Cir. 1988), *cert. denied*, 488 U.S. 1004 (1989).

In a subsequent case, *Ransom v. United States*, 17 Cl.Ct. 263 (1989), *aff'd*, 900 F.2d 242 (Fed.Cir. 1990), the plaintiffs sued the government upon a performance and payment bond, seeking the recovery of improper progress payments to a prior contractor. They alleged that the defendant's failure to notify them of the payments was a breach of contractual duty. The Claims Court disagreed, opining that

> the creditor is generally not required to voluntarily communicate to the surety matters concerning the financial responsibility of the principal, unless the surety makes specific inquiry regarding the point.

17 Cl.Ct at 270. The Federal Circuit in its affirmance quoted *Balboa Ins. Co. v. United States*, 775 F.2d 1158, 1160 (Fed.Cir. 1985):

> In contrast to a subcontractor, which has no obligations running to or directly from the Government * * * a surety, as bondholder, is as much a party to the Government contract as the contractor. If the *surety* fails to perform, the Government can sue it on the bonds.
>
> * * * Nevertheless, *Balboa* did not hold a surety has contractual rights against the government just because the government has contracted with the principal of the suretyship * * *.

900 F.2d at 245 (emphasis in original). *See Fireman's Fund Ins. Co. v. United States*, 909 F.2d 495, 499 (Fed.Cir. 1990)("By definition and agreement the surety protects the government's interests, not the other way around").

Be that as it may, the court of appeals in *Ransom* did state that in *Balboa* it

> carefully qualified its statements about surety's rights in relation to government contracts. We stated that "it is conceivable that *un-*

*der certain circumstances* a surety could assert rights against the Government" based on contract theory. * * * 775 F.2d at 1160 (emphasis added). Although the government *could* be contractually bound to a surety if it manifested such an intent, as alluded to in *Balboa*, that did not occur in this case and Ransom has not cited any act or statement as doing so.

900 F.2d at 245 (emphasis in original). The same is true herein. Indeed, a surety contract is negotiated with and signed by the principal and only then presented to the government at the time of entry. The principal agrees to pay Customs duties owed and, if it fails to do so, the surety is committed to remit them and become subrogated to any claims of the principal. In consideration for that, the principal agrees to pay the surety to undertake the risk of having to satisfy the Service if and when the principal does not. The government has to allow entry of the merchandise upon presentation of the bond, which serves to protect its interests and not those of the surety. In short, acceptance of the bond by Customs did not accord St. Paul assertable rights in this action. *See Washington Int'l Ins. Co. v. United States*, 18 CIT 654, 660–61 (1994), *aff'd*, 60 F.3d 843 (1995).

## IV

In view of the foregoing, defendant's motion for summary judgment must be granted and this action dismissed.

978 F. Supp. 333

RHEEM METALURGICA S.A., FORMERLY RHEEM EMPREENDIMENTOS INDUSTRIAIS E COMERCIAIS S.A., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 92–06–00380

(Dated August 22, 1997)

*David P. Schulingkamp,* New Orleans, LA, for plaintiff.

*Frank W. Hunger,* Assistant Attorney General of the United States, *Joseph I. Liebman,* Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice *(James A. Curley); Edward N. Maurer,* Office of the Assistant Chief Counsel, United States Customs Service, of Counsel, for defendant.