**UNITED STATES, Plaintiff,**

v.

**APPENDAGEZ, INC., a.k.a. Faded Glory, a.k.a. Faded Glory by Appendagez, Inc. and James Shane, Defendants.**

Court No. 81–8–01014.

United States Court of International Trade.

March 15, 1983.

J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Washington, D.C., Director, Commercial Litigation Branch (Francis J. Sailer, Washington, D.C., at argument and on brief), for plaintiff.

Peabody & Brown, Boston, Mass. (Marcus E. Cohn, Boston, Mass., at argument and on brief and Peggy A. Nelson, Newtonville, Mass., on brief) and Doherty, Melahn & Middleton, Boston, Mass. (William C. Melahn, Boston, Mass., on brief), for defendant, James Shane.

RAO, Judge:

This case is before the court on defendant James Shane's motion to dismiss the amended complaint filed by the plaintiff to recover civil penalties pursuant to 19 U.S.C. § 1592, Tariff Act of 1930, § 592, as amended. The motion is grounded on defendant's claim that the court lacks jurisdiction of the subject matter, that is a Section 1592 claim arising prior to the effective date of the Customs Courts Act of 1980, November 1, 1980; that the complaint fails to allege sufficient facts to state a cause of action against defendant James Shane; and that the defendant James Shane is shielded from personal liability because he acted only in his capacity as a corporate officer of Appendagez, Inc. at all times relevant to this action and in all events pertinent thereto.

I.

 Although I ruled from the bench during oral argument of the motion that this court has jurisdiction of this case, I shall set forth my reasons for so deciding. Prior to the effective date of the Customs Courts Act of 1980, judicial proceedings for the recovery of monetary penalties or for the forfeiture of merchandise under 19 U.S.C. § 1592 were brought by the United States Attorney General in the appropriate United States district court after referral by the United States Customs Service. However, the Court of International Trade was given exclusive jurisdiction of civil actions to recover penalties commenced by the United States by section 1582 of the Customs Courts Act of 1980:

> The Court of International Trade shall have exclusive jurisdiction of any civil action which arises out of an import transaction and which is commenced by the United States—
>
> (1) to recover a civil penalty under section 592, 704(i)(2), or 734(i)(2) of the Tariff Act of 1930;
>
> (2) to recover upon a bond relating to the importation of merchandise required by the laws of the United States or by the Secretary of the Treasury; or
>
> (3) to recover customs duties.

Although there can be little doubt that the language of this provision is unambiguous, the legislative history of the Act clearly shows that a transfer in jurisdiction from the district courts to the Court of International Trade was desired to be effectuated with no gap in jurisdiction between the courts:

> Section 1582 [House Report No. 96–1235, U.S.Code Cong. & Admin.News 1980, p. 3729, 3733]
>
> Proposed section 1582 grants the Court of International Trade new and exclusive jurisdiction over any civil action arising out of an import transaction and commenced by the United States to: (1) recover a civil fine or penalty or to enforce a forfeiture imposed under section 592 or section 704(i)(2) or section 734(i)(2) of the Tariff Act of 1930; or (2) to recover on a

bond relating to the importation of merchandise; or (3) to recover customs duties.

Jurisdiction over this type of civil action presently lies in the federal district courts. However, since each of these actions present (sic) questions which involve the expertise of the court, e.g. questions concerning classification, valuation or markings, the Committee believes exclusive jurisdiction over these actions should lie in the United States Court of International Trade.

Thus, when the Customs Courts Act of 1980 became effective on November 1, 1980, the jurisdiction over these actions was transferred to this court.

Defendant also relies on the holding of this court in *United States v. Digital Equipment Corp.*, 2 CIT ——, Slip Op. 82–11 (Jan. 29, 1982) in which the late Judge Richardson considered a motion for partial summary judgment in an action by the government to recover civil monetary penalties under 19 U.S.C. § 1592 for merchandise imported between April 1974 and December 1976 and mislabeled on the invoices as being the growth, production and manufacture of the United States when in fact some parts of the merchandise were of foreign origin.

Judge Richardson dismissed the action stating that "[t]his court does not have jurisdiction over *in rem* penalty issues arising under the former section 1592."[1] In so deciding he relied on the legislative history of the Customs Procedural Reform and Simplification Act of 1978, Pub.L. No. 45–910, 92 Stat. 888, S.Rept. No. 95–778, May 2, 1978 [To Accompany H.R. 8149] at 19, reprinted in 1978 U.S.Code Cong. & Admin. News, 2211, 2230, to the effect that:

> The penalty for violation of section 592 would be changed from an in rem penalty, forfeiture of the merchandise, to an in personam penalty, a monetary liability of the importer. However, seizure of the merchandise would be permitted if the Secretary of the Treasury has "reasona-

ble cause to believe: the importer is insolvent, outside U.S. jurisdiction, or that seizure is "necessary" to protect the revenue or prevent the importation of restricted goods. The seized merchandise would, in general, be forfeited to the United States only if the monetary penalty is not paid.

A perusal of the entire section 10 of which the above is a part, beginning on page 17 of the Senate Report, U.S.Code Cong. & Admin.News 1978, p. 2228, evidences an appreciation on the part of Congress that penalties for fraud under section 592 of the Tariff Act of 1930, as amended, could be either in rem or in personam at the time the Customs Procedural Reform and Simplification Act of 1978 was being considered:

> *Present law.*—Section 592 of the Tariff Act of 1930 (19 U.S.C. 1592) penalizes any person who imports, attempts to import, or aids or procures the importation of merchandise into the United States "by means of any fraudulent or false invoice, declaration, affidavit, letter, paper, or by means of any false statement, written or verbal, or by means of any false or fraudulent practice or appliance whatsoever," unless that person has "reasonable cause to believe the truth of such statement." Violation of section 592 is penalized by forfeiture of the merchandise or *a payment equal to the value of the merchandise.* The penalty applies to negligent as well as intentional violations and whether or not an underpayment of duties results from the violation. [Emphasis added.]

Indeed, it is evident that Congress amended section 592 in response to criticism by the importing community as to other matters and not to make it an in personam rather than an in rem proceeding [Senate Report on H.R. 8149, at 2, U.S.Code Cong. & Admin.News 1980, p. 2213]:

> The bill, as amended by the committee, would amend section 592 of the Tariff Act of 1930, the penalty provision for

---

1. Presumably, that version of section 1592 in effect during the period of importation, 1974 to 1976, to wit, 19 U.S.C. § 1592 (1976).

false and material statements in the Tariff Act. Existing section 592 is strongly criticized by all segments of the importing public because it requires a fixed penalty regardless of the nature of the violation, lacks due process safeguards, and does not permit effective judicial review.

Present law prohibits the importation of goods into the United States "by means of any fraudulent or false invoice, declaration, affidavit, letter, paper, or by means of any false statement, written or verbal, or by means of any false or fraudulent practice or application whatsoever" unless the person has reasonable cause to believe the truth of such statement. The penalty imposed for violation of this provision is forfeiture of the merchandise itself or a fine equal to its domestic value.

The penalty under section 592 applies without regard to the degree of culpability. The penalty of forfeiture value may be applied to a violation occurring as a result of simple negligence. While Customs has procedures for mitigation of a section 592 penalty, the issuance of the original unmitigated claim creates several problems. For example, publicly held corporations must disclose penalty claims as contingent liabilities leading to difficulties involving the corporations' financial relationships. H.R. 8149 would provide different penalties for three different degrees of culpability: fraud, gross negligence, and negligence.

Section 592 also lacks procedural safeguards for the alleged violator and does not permit effective judicial review. The respondent is forced to choose between accepting the mitigated administrative penalty or face a Government suit, in which case the claim is for full forfeiture value. The court can only decide whether or not a violation occurred. It cannot change the amount of statutory penalty, domestic value.

House Report No. 95–621 accompanying H.R. 8149 contains similar language. It can be concluded that the changes to § 592 were enacted to effectuate reforms dealing with degrees of culpability, procedural safeguards for the alleged violator and effective judicial review, not to change the proceeding from in rem to in personam.

Case law also requires the conclusion to be drawn that section 592 penalty cases can result in a money judgment against the persons who violate the tariff laws by false invoicing. In *United States v. Brown,* 404 F.Supp. 968 (S.D.N.Y.1975), the government brought an action under 19 U.S.C. § 1592 to recover penalties for the introduction into the commerce of the United States by one Brown and the United States Telephone Company, of imported decorator telephones under invoices which listed unit prices considerably lower than the unit prices for the merchandise submitted for purposes of obtaining letters of credit. The court considered the evidence, including the testimony of the customs import specialist who valued the merchandise, and entered judgment against both defendants for the domestic value of the imported merchandise.

Logic and practical considerations also require the conclusion that a monetary amount is to be demanded alternatively with actual forfeiture of the goods. In many cases, the fraud or negligent conduct is not discovered until well after the merchandise has been sold to third parties or otherwise entered the stream of commerce, and limiting the government to an action against the merchandise only (in rem) would result in the denial of the applicability of the statute where the merchandise is no longer available for seizure. The illogic of such a construction was early recognized in the case of *United States v. Leon Rheims Co.,* 246 F. 179 (S.D.N.Y.1917) where the court, in upholding the complaint filed by the United States against the purchaser, the corporate seller and its president, stated:

> [I]t will appear that for well over a century the forfeiture is confined to the merchandise, or, *if the merchandise cannot be found or seized, then to the value thereof.* [Emphasis added]

The court held the complaint, which sought to recover a money judgment against the defendants under paragraph H of section III of the Tariff Act of 1913 (predecessor to the current section 592), good.[2]

## II.

I shall consider next whether the complaint sufficiently states a cause of action against the defendant James Shane who argues that the counts of the complaint charging negligence or gross negligence on his part with respect to the false invoices are insufficient as a matter of law in that they do not specify the acts that constitute such gross negligence or negligence.

Rule 8(a) of the Court of International Trade sets out the requirements for pleadings:

Rule 8. General Rules of Pleading

(a) Claims for Relief. . A pleading which sets forth a claim for relief, whether an original claim, counterclaim, crossclaim or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief to which he deems himself entitled. Relief in the alternative or of several different types may be demanded.

In keeping with the liberalization of pleading rules in federal courts, Rule 8(f)(1) requires that:

(1) Each averment of a pleading shall be simple, concise and direct. No technical forms of pleading or motions are required.

The Supreme Court, speaking through Mr. Justice Black, set out the requirements in evaluating the sufficiency of a complaint in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957):

In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

■ Considering these rules and this decision, the amended complaint's allegations as to negligence and gross negligence are adequate. Plaintiff alleges, in its various counts, but particularly in Count I, that the defendants filed written declarations with the United States Customs Service that did not set forth dutiable quota charges on the merchandise, and that these written declarations stated that the prices set forth in the entries and documents were true and that all charges upon the merchandise were set forth therein, statements that were both false and material.

If the defendant requires more particularity in order to marshal his defenses, he may file a motion for a more definite statement pursuant to Rule 12(e), pointing out the defects complained of and the details desired. *Cf. United States v. 76,552 Pounds of Frog Legs,* 423 F.Supp. 329 (S.D.Tex. 1976).

## III.

It is defendant James Shane's position that the complaint should be dismissed because 19 U.S.C. § 1592 reaches only individuals acting in their individual capacities and not individuals acting in their corporate capacities.

■ While it is true that corporate officers are not liable for the illegal actions of others in the corporation merely by virtue of their positions or offices, they may become liable, however, if they knowingly participate in such actions. *Herm v. Stafford,* 466 F.Supp. 439 (W.D.Ky.1979); *Harlem River Consumers Co-op. v. Associated Grocers,* 408 F.Supp. 1251 (S.D.N.Y.1976).

---

**2.** See also *U.S. v. Accurate Mould Co.,* 4 CIT ——, Slip Op. 82–65, 546 F.Supp. 567 (Aug. 11, 1982) and *U.S. v. Digital Equipment Corp.,* 4 CIT —— (Aug. 12, 1982).

This court, at this stage of the proceedings is unable to determine whether any of defendant James Shane's activities with respect to the false invoices which are the basis for this section 1592 action involved direct participation, some lesser degree of informed participation, or even an omission of a duty to correct false invoices when the falsity and materiality of the representations on the invoices were brought to his attention. As president of Appendagez, Inc. he very likely may have known that the prices which were being paid for the merchandise were higher than those shown on invoices, whether he also knew how the merchandise was being invoiced. This is a matter of fact that cannot be determined on this motion. There were no affidavits filed by defendant James Shane or on his behalf which set out the extent, if any, of defendant James Shane's involvement with the instant invoices. Absent affidavits or other data supporting the conclusory allegations in the brief supporting the motion to dismiss, this court cannot hold as a matter of law that his actions are shielded by his doing business through a corporate form. *Cf. Herm v. Stafford, supra.*

Defendant James Shane also argues that he is not a "person" subject to the sanctions imposed by section 592. The legislative history of the Customs Procedural Reform and Simplification Act compels us to decide otherwise. The House Report, *supra,* at 12 states that "[t]he scope of persons potentially affected under this subsection has been derived from the existing language of section 592." The Senate Report employs similar language in saying that "[t]he persons covered and the nature of the offense are intended to remain the same as they are under present law".

The Customs Procedural Reform and Simplification Act's phrase, "no person," in section 592 replaced language in the previous statute that listed the persons who would be held accountable for entering or introducing merchandise into this country by means of false invoices as "any consign-or, seller, owner, importer, consignee, agent or other person or persons." No limitation was placed on whether such persons were corporations or natural persons and none can be implied.

We are also guided by the Supreme Court, speaking through Mr. Chief Justice Warren in *United States v. Wise,* 370 U.S. 405, 409, 82 S.Ct. 1354, 1357–1358, 8 L.Ed.2d 590 (1962):

> No intent to exculpate a corporate officer who violates the law is to be imputed to Congress without clear compulsion; else the fines established ... to deter crime become mere license fees for illegitimate corporate business operations.

We conclude that there is nothing in the Act nor its legislative history to indicate that the Congress intended to restrict the applicability of the penalties to corporations and to exclude from the applicability of the penalties officers of corporations merely because of a claim that they were acting in their corporate capacities.

## IV.

We note that the plaintiff has conceded that this action is time barred pursuant to 19 U.S.C. § 1621 as to penalties on entries made prior to five years before the commencement of this action. However, it takes the position that its causes of action for the increased customs duties are not time barred. The applicable statutory provision, 19 U.S.C. § 1521, provides that if the appropriate customs officer finds probable cause to believe that there is fraud in the case, he may reliquidate an entry within two years after the date of liquidation or last reliquidation. If there is no probable cause to believe that there is fraud in the case, 19 U.S.C. § 1514(c)(2)(A) applies, and the cause of action is time barred if not brought within 90 days after notice of liquidation or reliquidation.

We cannot determine, from the amended complaint and its attachments, when, if ever, the disputed entries were liquidated or

reliquidated, and whether the appropriate customs officer had probable cause to believe there was fraud in the case. Accordingly, this court withholds its decision on whether plaintiff's claim for duties of which it was deprived is time barred, pending further submissions of proofs by the parties.

It is, therefore, the judgment of this court that it has jurisdiction of the subject matter of this case, that the complaint states a cause of action against defendant James Shane, and that the claims on entries made prior to five years from the commencement of this action are time barred.