JOHN DIGIORGIO, PLAINTIFF *v.* UNITED STATES AND UNITED STATES CUSTOMS SERVICE OF THE DEPARTMENT OF THE TREASURY, DEFENDANTS

Court No. 83–5–00694

Before CARMAN, *Judge.*

(Decided September 27, 1984)

*Orrin L. Grover* for the plaintiff.
*Richard K. Willard,* Acting Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch (*Barbara M. Epstein* on the motion), for the defendants.

CARMAN, *Judge:* This matter is before me on defendants' motion for summary judgment on their counterclaim for liquidated damages arising from the breach of an importation bond. Jurisdiction over the counterclaim rests upon 28 U.S.C. § 1583 (1982).[1]

The long and unfortunate history of this case began on March 9, 1975, when, at the Port of San Francisco, plaintiff imported two Ferrari automobiles. In connection with this importation, and as 19 C.F.R. § 12.73(b)(5)(x) (1983) prescribes, plaintiff was required to submit a declaration to the United States Customs Service (Customs) that, within 90 days, the imported vehicles would be brought into conformity with federal emissions standards of the United States Environmental Protection Agency (EPA), and that, within 180 days, the vehicles would be brought into compliance with the federal safety standards of the United States Department of Transportation (DOT).

*See* 19 C.F.R. § 12.73(b)(5)(x)[2]; *id.* § 12.80(b)(1)(iii); 40 C.F.R. § 85.1504. In addition, plaintiff was required to submit a surety

---

[1] 28 U.S.C. § 1583 (1982) provides:
In any civil action in the Court of International Trade, the court shall have exclusive jurisdiction to render judgment upon any counterclaim, cross-claim, or third-party action of any party, if (1) such claim or action involves the imported merchandise that is the subject matter of such civil action, or (2) such claim or action is to recover upon a bond or customs duties relating to such merchandise.

[2] 19 C.F.R. § 12.73(b)(5)(x) (1983) reads:
*Requirements for entry and release.* Each motor vehicle or motor vehicle engine offered for importation or imported into the Customs Territory of the United States shall be refused entry unless there is filed with the entry, in duplicate, a declaration verified by the importer or consignee which contains:

\* \* \* \* \* \* \*

A statement that:

bond in connection with the entry. *See* 19 C.F.R. § 12.73(c) [3]; *id.* § 113.14(g). The bond, the purpose of which is to ensure compliance with the applicable EPA and DOT standards, by its own terms provided that if the imported merchandise was not brought into conformity with the applicable entry requirements within the regulatory time period, then the importer would redeliver the merchandise to Customs. Under 19 CFR § 12.73(c), an importer has 5 days, after the running of the 90-day period, to redeliver the nonconforming vehicle. As reflected in the regulations and in the bond itself, nonperformance of this condition would result in forfeiture of the bond as liquidated damages for breach.

Customs granted four extensions of time to plaintiff, covering the better part of a year, for the vehicles to be conformed. Customs finally demanded redelivery on August 20, 1976, after plaintiff had requested a fifth extension of time. The vehicles were not redelivered, and, accordingly, Customs issued a Notice and Demand for Liquidated Damages on September 2, 1976.

Plaintiff petitioned for mitigation on October 22, 1976. During these mitigation proceedings, which appear to have lasted almost 2 years, it was learned that one of the vehicles was exported by plaintiff in June of 1976. Customs mitigated to $1,000 the damages for late performance with respect to the exported vehicle. This amount was paid by plaintiff's surety on January 11, 1979.

With respect to the other vehicle, plaintiff petitioned for mitigation on the basis that the vehicle was being modified to meet the EPA and DOT standards. On October 18, 1979, plaintiff was informed that Customs would mitigate its claim to $1,000. Plaintiff was also advised that if the amount was not paid within 30 days the claim would revert to the original amount, $6,283. Plaintiff did not pay the mitigated amount, and Customs accordingly demanded full payment of the liquidated damages.

## PROCEEDINGS IN THE DISTRICT COURT

On February 19, 1980, plaintiff commenced an action for declaratory and injunctive relief against the EPA and Customs in the

---

\* \* \* \* \* \* \*

Such motor vehicle or motor vehicle engine is not covered by a certificate of conformity with Federal motor vehicle emission standards but will be brought into conformity with such standards and is being imported under bond in accordance with 40 C.F.R. 85.1504 \* \* \*.

[3] 19 C.F.R. § 12.73(c) (1983) provides in part:

*Release under bond.* If a declaration filed in accordance with paragraph (b) of this section states that the entry is being made under circumstances described in paragraph (b)(5)(ix), (x), or (xi) of this section, the entry shall be accepted only if the importer or consignee gives a bond on Customs Form 7551, 7553, or 7595 for the production of a declaration that the vehicle is in conformity with Federal emission standards or, in the case of an entry made under circumstances described in paragraph (b)(5)(xi) of this section, for the production of an appropriate declaration under paragraph (b)(5) (i) through (x) of this section. The bond shall be in the amount required under § 113.14 of this chapter. Within 90 days after such entry, or such additional period as the district director of Customs may allow for good cause shown, the importer or consignee shall deliver to the district director the prescribed declaration. If the declaration is not delivered to the district director of Customs for the port of entry of such vehicles or engines within 90 days of the date of entry or such additional period as may be allowed by the district director, for good cause shown, the importer or consignee shall deliver or cause to be delivered to the district director of Customs those motor vehicles or motor vehicle engines which were released in accordance with this paragraph. In the event that any such motor vehicle or motor vehicle engine is not re-delivered within 5 days following the date specified in the preceding sentence, liquidated damages shall be assessed in the full amount of a bond given on Form 7551 \* \* \*

United States District Court for the District of Oregon. The complaint alleged violations of due process and equal protection with respect to the validity of the regulations, the authority of Customs, the fairness of the administrative procedures, and denials of Freedom of Information Act requests. As for relief, the complaint demanded a "declaration that the plaintiff is entitled to possession and use of his automobiles free of any lien or encumbrance * * * and for the release of any and all bonds posted for the automobiles." Complaint at 4, *John diGiorgio* v. *United States,* No. 80–234 (D. Or. Feb. 19, 1980). On March 9, 1981, the United State's Attorney's Office for the District of Oregon filed an answer and a counterclaim for liquidated damages. The answer basically lodged denials of plaintiff's claims and asserted affirmative defenses of failure to state a claim, lack of subject matter jurisdiction, and improper venue. Defendants in their counterclaim alleged that plaintiff had violated the terms of the surety bond and was liable in the full amount of $6,283.

On July 20, 1982, the defendants moved to dismiss the complaint and for summary judgment on their counterclaim. By order dated March 11, 1983, the district court dismissed the entire action, stating that with respect to the Customs and EPA regulations, the court was without subject matter jurisdiction, citing 28 U.S.C. § 1581 (1982), and 42 U.S.C. § 7606(b)(1) (1982) (petitions for reviewing EPA emissions standards may be filed only in appropriate circuit court of appeals or District of Columbia Circuit). The court also concluded that it lacked jurisdiction over the counterclaim since 28 U.S.C. § 1346(c) (1982), which provides federal jurisdiction over a counterclaim by the United States in an action commenced under section 1346, was inapplicable. *See Richardson* v. *Morris,* 409 U.S. 464 (1973) (per curiam). Defendants then moved to reinstate their counterclaim asserting an alternative basis of federal jurisdiction, 28 U.S.C. § 1345, and also asked the court to reconsider its denial of their earlier summary judgment motion. The court, by minute order on April 11, 1983, set aside its judgment dismissing the action. Shortly thereafter, defendants moved for "partial judgment," requesting: (1) that judgment be entered dismissing the action vis-a-vis the EPA and dismissing all claims under the Clean Air Act; and, (2) that the remaining claims and the counterclaim be transferred to the Court of International Trade pursuant to 28 U.S.C. § 1631. The district court, by minute order of May 2, 1983, ordered the case transferred to the Court of International Trade.

## DISCUSSION

In opposing defendants' motion for summary judgment on the counterclaim, plaintiff states three arguments: (1) the government ought to be estopped from asserting the counterclaim because plaintiff demonstrated that the automobile was brought into compliance with California emission standards, which standards alleg-

edly are more stringent than the EPA standards; (2) triable issues of fact exist with respect to an alleged deprivation of due process; and, (3) the counterclaim is time-barred under 19 U.S.C. § 1621 (1982).

## I. Administrative-Based Collateral Estoppel

Plaintiff maintains that because the vehicle in controversy allegedly was brought into compliance with the higher California emission standards, the defendants should be estopped from asserting their counterclaim. Plaintiff's position, however, is without merit. First, the Court of International Trade is hardly the forum to ascertain whether the State of California has promulgated more stringent pollution standards than the EPA, and whether plaintiff has indeed complied with those higher standards.[4] Further, plaintiff has only put forth a 13-year-old Federal Register notice in support of his position. See 36 Fed. Reg. 8172 (1971). The notice, in addition to its questionable probity and relevance, contains various exceptions and limitations. And, quite apart from these shortcomings, the traditional earmarks of collateral estoppel are not present in this case. Essential to collateral estoppel, whether "administrative-based" or otherwise,[5] is the prior affording of a full and fair opportunity to litigate a particular issue. See Lawlor v. National Screen Service Corp., 349 U.S. 322, 326 (1955). Defendants have not had the opportunity to litigate any issue with respect to the particular claim in controversy here. Indeed, there has been no prior action with respect to those issues. Collateral estoppel, therefore, finds no place in this litigation and cannot serve as a defense of defendant's counterclaim.

## II. Do Issues of Material Fact Exist?

Plaintiff, through counsel in the opposing memorandum, asserts that the conformation testing procedure was unduly harsh and that certain information was withheld by the EPA and Customs.[6] In addition, plaintiff maintains that the procedures followed by the agency were constitutionally defective in that plaintiff was not al-

---

[4] The court also notes that the EPA has been dropped as a party to this action. The issues pertaining to the EPA similarly are not properly before this court. See Rule 21 of the Rules of the United States Court of International Trade.

[5] Plaintiff's reliance on an "administrative based collateral estoppel" appears, in any event, misplaced. Plaintiff, citing United States v. Utah Constr. & Mining Co., 384 U.S. 394 (1966), asserts that the EPA's finding pertaining to the California emission standards should estop the defendants from raising the counterclaim. Utah Construction, and the line of cases of which it is a part, however, is inapposite to the matter before the court. In Utah Construction, there was a prior litigation of factual issues before the Advisory Board of Contract Appeals, a crucial aspect missing from diGiorgio's calculus. The question was whether some of the board's prior findings ought to be given conclusive effect in the United States Court of Claims. The Supreme Court held that the "findings on factual issues relevant to questions arising under the contract [were] final and conclusive on the parties." Id. at 419 (footnote omitted). This holding, however, was not predicated on some vague notion of "administrative-based collateral estoppel" but on express contract language as well as the "Wunderlich Act," 41 U.S.C. § 321–322 (1982). See United States v. Carlo Bianchi & Co., 373 U.S. 709, 714 (1963).

[6] Plaintiff claims that Customs notified him that the imported automobile would have to be subjected to 50,000 miles of testing to ensure compliance with accepted emissions standards. In addition, plaintiff asserts that he resorted to "congressional intervention and a number of freedom of information requests" in dealing with Customs. Plaintiff's Response In Opposition, at 6.

lowed to examine the evidence against him and was denied the opportunity to present the matter to an impartial authority.[7] These assertions, in the court's view, fail to raise issues of material fact.

In order for a matter to be amenable to disposition by summary judgment, no genuine issues of material fact may exist. *See Schoenfeld & Sons, Inc.* v. *United States,* 3 CIT 123, 124 (1982). Plaintiff has twice agreed to recitations of the relevant facts in this case. In their *Statement of Material Facts To Which There Is No Genuine Issue To Be Tried,* required by Rule 56(i) of th Rules of this court, defendants set forth the germane facts of this dispute. These facts were outlined above. Plaintiff filed no "separate, short and concise statement of the material facts as to which it is contended * * * there exists a genuine issue to be tried." U.S. Ct. Int'l Trade R. 56(i). The court, therefore, deems admitted those facts alleged in defendants' statement. In addition, the court earlier had ordered defendants to submit a "Chronology of Events," which recounted the relevant facts of the case. Plaintiff did not file any written objections to the chronology, and, further, plaintiff agreed that it was accurate and correct in all respects. Counsel for plaintiff cannot at this stage inject factual issues into this matter by way of assertion in legal memoranda. *See Royal Indemnity Co.* v. *Westinghouse Electric Corp.,* 385 F. Supp. 520, 523 (S.D.N.Y. 1974) (Weinfeld, J.) ("Lawyers for litigants cannot defeat one's right to summary judgment by 'superinducing the idea' that a genuine issue of fact exists when one does not exist.") (footnote omitted).

As is clear from the earlier discussion of the long history of this case, the relevant agencies acted within their regulatory authority. Plaintiff's alleged entitlements to access to certain information and a hearing before an impartial adjudicative officer are not found in the Customs Regulations. The court accordingly finds that no genuine issue of material fact has been raised.

### III. Statute of Limitations

Plaintiff asserts that the counterclaim is time-barred under 19 U.S.C. § 1621 (1982).[8] Section 1621 provides a 5-year period of limitations and applies to actions "to recover any pecuniary penalty or forfeiture of property accruing under the customs laws." *Id.* This action, however, is not governed by 19 U.S.C. § 1621.

---

[7] Plaintiff points out that he was denied access to certain communications among the EPA, DOT and Customs. The agencies allegedly claimed exemption from disclosure under the Freedom of Information Act, 5 U.S.C. § 552 (1982). Plaintiff asserts that these actions, along with Customs' failure to provide an adjudicative officer, deprived him of due process.

[8] 19 U.S.C. § 1621 (1982) provides:

No suit or action to recover any pecuniary penalty or forfeiture of property accruing under the customs laws shall be instituted unless such suit or action is commenced within five years after the time when the alleged offense was discovered: *Provided,* That in the case of an alleged violation of section 1592 of this title arising out of gross negligence or negligence, such suit or action shall not be instituted more than five years after the date the alleged violation was committed: *Provided further,* That the time of the absence from the United States of the person subject to such penalty or forfeiture, or of any concealment or absence of the property, shall not be reckoned within this period of limitation.

*Id.* Originally, in his reply to the counterclaim, plaintiff alleged that the 5-year statute of limitations at 28 U.S.C. § 2642 (1982) barred the counterclaim. Plaintiff has moved, however, to amend that reply to substitute section 1621 as the applicable period of limitations. Plaintiff's motion to amend his reply is granted.

Section 1621 relates to penalty-type proceedings, such as those pursued by the United States under 19 U.S.C. § 1592 (1982). *See United States* v. *Gordon,* 7 CIT 350, Slip Op. 84–68, at 1 (June 13, 1984); *United States* v. *Appendagez, Inc.,* 5 CIT 74, 560 F. Supp. 50, 55 (1983). This action involves a counterclaim by the United States for liquidated damages arising from the breach of a bond. Section 1621 is not applicable. Rather, the right granted to the government by 28 U.S.C. § 2415(f) governs here.[9] Section 2415(f) clearly states that in an action founded upon breach of contract, a statute of limitations may not prevent the government from asserting a counterclaim that arises from the same transaction or occurrence as the main claim. In this case, defendant's counterclaim obviously arises out of the same transaction or occurrence as plaintiff's opposing claim, namely, the importation of the Ferrari automobile in dispute. Therefore, plaintiff's statute of limitations defense is without merit.[10]

The court, as indicated above, finds that, from the administrative record filed in this case, the stipulated chronology of events, as well as the Rule 56(i) statement, there are no genuine issues of material facts to be resolved. The court further finds that these established facts demonstrate that plaintiff breached his obligations under the importation bond and that defendants are entitled to summary judgment. *See Radobenko* v. *Automated Equipment Corp.,* 520 F.2d 540, 543 (9th Cir. 1975).

It is evident that plaintiff undertook the bond obligation with a clear understanding as to its import. Article 4 of the standard "Immediate Delivery and Consumption Entry Bond" clearly provides that "in default of redelivery after a proper demand on him, the above bounden principal shall pay to the district director such amounts as liquidated damages as may be demanded by him in accordance with the law and regulations not exceeding the amount of this obligation, for any breach or breaches thereof * * *." Plaintiff

---

[9] 28 U.S.C. § 2415(f) provides:

The provisions of this section shall not prevent the assertion, in an action against the United States or an officer or agency thereof, of any claim of the United States or an officer or agency thereof against an opposing party, a co-party, or a third party that arises out of the transaction or occurrence that is the subject matter of the opposing party's claim. A claim of the United States or an officer or agency thereof that does not arise out of the transaction or occurrence that is the subject matter of the opposing party's claim may, if time-barred, be asserted only by way of offset and may be allowed in an amount not to exceed the amount of the opposing party's recovery.

*Id.* Thus, section 2415(f) "unmistakably grant[s]" the defendants a right to "assert any counterclaim against an opposing party" if that counterclaim arises out of the same transaction or occurrence that is the subject of the opposing party's claim. *Simmonds Precision Prods, Inc.* v. *United States,* 546 F.2d 886, 892 (Ct. Cl. 1976) (per curiam). It should be noted that the last sentence of section 2415(f) refers to the 6-year limitations period contained in subsection (a) of 2415, and which applies to "every action for money damages brought by the United States . . . which is founded upon any contract." 28 U.S.C. § 2415(a). However, "[t]he six-year limitation period . . . is inapplicable when the United States seeks to recover by counterclaim or set off . . . ." *FDIC* v. *United States,* 527 F. Supp. 942, 949 (S.D.W. Va. 1981). It is settled that section 2415(a) applies when the United States, as plaintiff, seeks recovery for liquidated damages arising from the breach of an importation bond. *See United States* v. *Bavarian Motors, Inc.,* 4 CIT 83, 87 (1982).

[10] The government may, under some circumstances, be estopped from asserting a counterclaim. For this to occur, however, an opposing party must show "some damage or prejudice suffered by it as a direct result of the Government's delay in asserting its counterclaim." *Simmonds Precision Prods., Inc.* v. *United States,* 546 F.2d 886, 892 (Ct. Cl. 1976) (per curiam). Although the counterclaim in the present case was not filed until March 9, 1981, plaintiff, as discussed above, has shown no prejudice or damage resulting from the delay. In addition, since 28 U.S.C. § 2415(f) applies to this action, there is no need to decide when defendants' claim accrued and whether that claim "relates back" to the main claim for statute of limitations purposes.

was granted four extensions of time to conform the vehicle. When it was apparent that performance would not be forthcoming, Customs issued a proper redelivery notice. Thereafter, Customs afforded plaintiff even more time to comply. *See* 19 C.F.R. § 12.73(c). Customs finally issued the proper Notice and Demand for Payment of Liquidated Damages. *See id.* § 172.1(a). The mandatory mitigation procedures were followed by Customs with great leniency. Rather than pay a mitigated amount of $1,000, however, plaintiff chose to file suit in the district court seeking to avoid payment altogether. The Government, of course, filed its counterclaim for the full amount of liquidated damages and is entitled to prevail on that claim. Defendants have established a violation of the bond's terms, and plaintiff "may not be heard to complain when [Customs] demands liquidated damages in the amount agreed to * * *." *C.S. Emery & Co.* v. *United States,* 2 Cust. Ct. 792, 793–94 (1939); *see* 5 S. Williston, *A Treatise on the Law of Contracts* § 775B, at 661–64 (3d ed. 1961).

## CONCLUSION

The record in this case clearly indicates that plaintiff breached his obligations under an importation bond. Further, plaintiff's asserted defenses against the enforcement of the bond's terms are without merit. Accordingly, defendants' motion for summary judgment on their counterclaim must be, and hereby is, granted.

Judgment will be entered accordingly.