UNITED STATES of America, Plaintiff,

v.

Joseph BLUM; E.C. McAfee & Co.; and St. Paul Fire and Marine Insurance Co., Defendants.

Court No. 85–05–00640.

United States Court of International Trade.

April 22, 1987.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, A. David Lafer and Kevin C. Kennedy, (Martin J. Ward, Asst. Regional Counsel, U.S. Customs Service, of counsel), for plaintiff.

Fitch, King and Caffentzis, James Caffentzis, for defendant E.C. McAfee & Co.

Sandler & Travis, P.A., Leonard L. Rosenberg and Edward M. Joffe, for defendant St. Paul Fire and Marine Ins. Co.

OPINION

AQUILINO, Judge:

This action has been brought pursuant to 19 U.S.C. § 1592 and 28 U.S.C. § 1582. Counts I, II and III of the complaint respectively allege fraud, gross negligence and negligence within the meaning of subsection (a) of section 1592 on the part of defendant Blum. Recovery of penalties provided for by subsection (c) thereof is sought against him on those counts. The complaint further alleges loss of duties as a result of the pleaded violations of subsection (a), and a fourth claimed cause of action seeks recovery of those duties against defendant Blum pursuant to 19 U.S.C. § 1592(d). In addition, Count IV alleges the same cause of action as against defendant E.C. McAfee & Co. ("McAfee")

and defendant St. Paul Fire and Marine Insurance Co. ("St. Paul").

St. Paul has answered the complaint and also impleaded as third-party defendants International Citrus of Canada, Inc. ("ICC") and International Citrus of Canada, Ltd. Moreover, it has interposed a motion for judgment on the pleadings as against the plaintiff pursuant to CIT Rule 12(c).

On its behalf, McAfee has moved to dismiss the complaint on several specified grounds, one of which is that the plaintiff does not have a cause of action against it under 19 U.S.C. § 1592(d) for recovery of lost duties. This is also the gravamen of St. Paul's position.

## Background

According to the complaint, from January 12 to September 16, 1980, defendant Blum, as president and controlling officer of ICC, caused numerous shipments of orange-juice concentrate to be entered duty free as "U.S. goods returned" under item 800.00, TSUS. *See* Complaint, para. 6. It is alleged that these shipments were not entitled to duty-free treatment, since the concentrate had been commingled with Brazilian juice and had already received the benefit of drawback upon entry in Florida, from where it had been shipped to Canada. *See id.*, para. 7. The plaintiff claims a duty of 35 cents per gallon pursuant to TSUS item 165.3540. *See id.*, para. 8.

Paragraph 4 of the complaint alleges that McAfee was the importer of record of some of the entries at issue, the last of which was on May 2, 1980[1], while paragraph 5 claims that St. Paul was McAfee's surety thereon. Neither is accused in the complaint of any wrongdoing.

With regard to defendant Blum, Customs conducted an internal investigation[2], which led to the filing of a multicount indictment in October 1981 against both him and ICC in the U.S. District Court for the Western District of New York. On August 16, 1982, the court accepted a plea by ICC of guilty to three counts. It was fined a total of $15,000, and the remaining counts against the corporation and all counts against Mr. Blum were then dismissed.

The entries at issue in this action had been liquidated as entered in 1980. On March 12, 1985, Customs demanded payment of the "lost duties" from McAfee and from St. Paul. *See id.*, paras. 29 and 33.

The plaintiff commenced this action on May 6, 1985, seeking recovery of the duties, as indicated above, pursuant to 19 U.S.C. § 1592(d). The motions of McAfee and St. Paul necessitate consideration of the purview of that paragraph.

## I

Section 592 of the Tariff Act of 1930 was amended by the Customs Procedural Reform and Simplification Act of 1978 ("1978 Act") and by the Customs Courts Act of 1980. Provisions of the revised section[3] relevant herein are as follows:

Penalties for fraud, gross negligence, and negligence

(a) Prohibition.—

(1) General rule.—Without regard to whether the United States is or may be deprived of all or a portion of any lawful duty thereby, no person, by fraud, gross negligence, or negligence—

(A) may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States by means of—

(i) any document, written or oral statement, or act which is material and false, or

(ii) any omission which is material, or

---

1. *See* Complaint, Exhibit B.

2. *See* Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss [hereinafter cited as "Plaintiff's Opposition to McAfee"], Exhibit B (Report of Investigation (May 13, 1980)).

3. In general, this opinion cites hereinafter the section numbers of the Tariff Act used by the United States Code. References to section numbers of that statute, as amended, are used solely to make their contexts clearer.

(B) may aid or abet any other person to violate subparagraph (A).

(2) Exception.—Clerical errors or mistakes of fact are not violations of paragraph (1) unless they are part of a pattern of negligent conduct.

\* \* \* \* \* \*

(d) Deprivation of lawful duties.—Notwithstanding section 1514 of this title, if the United States has been deprived of lawful duties as a result of a violation of subsection (a) of this section, the appropriate customs officer shall require that such lawful duties be restored, whether or not a monetary penalty is assessed.

(e) Court of International Trade proceedings.—Notwithstanding any other provision of law, in any proceeding commenced by the United States in the Court of International Trade for the recovery of any monetary penalty claimed under this section—

(1) all issues, including the amount of the penalty, shall be tried de novo;

(2) if the monetary penalty is based on fraud, the United States shall have the burden of proof to establish the alleged violation by clear and convincing evidence;

(3) if the monetary penalty is based on gross negligence, the United States shall have the burden of proof to establish all the elements of the alleged violation; and

(4) if the monetary penalty is based on negligence, the United States shall have the burden of proof to establish the act or omission constituting the violation, and the alleged violator shall have the burden of proof that the act or omission did not occur as a result of negligence.

Although the meaning of the foregoing paragraph (d) is not unambiguous, the provision on its face does not permit recovery of duties lost independent of a violation of subsection (a), nor does its legislative history support a view of government counsel that section 1592(d) has given rise to "a new cause of action in favor of the government"[4].

Congress passed the 1978 Act after receiving numerous complaints about the unfairness of the prior section 592.[5]  Under that repealed provision, Customs sought penalties amounting to the value of the goods from importers who had violated it. That section did not provide for less drastic penalties for negligence.  Rather, an importer could escape the only penalty a court could impose by filing a petition pursuant to 19 U.S.C. § 1618, which permitted the Secretary of the Treasury to mitigate the sanction.  The Secretary delegated the authority to grant such relief to the Commissioner of Customs, who, in turn, redelegated this responsibility to certain Service officers.  *See* T.D. 74–287, 8 Cust.Bull. 553, 554 (1974).

Customs frequently mitigated section 592 violations via section 1618.[6]  In an attempt to achieve uniformity of mitigation, the Commissioner issued guidelines[7] for reduction of penalties based on the degree of culpability of an offender.  The violator had to pay a multiple of the "total loss of revenue" plus "the revenue of which the Government was deprived by the violation in respect of entries on which liquidation has become final".  *Id.* at 556.  The "miti-

---

**4.** First Annual Judicial Conference of the United States Court of International Trade, 102 F.R.D. 639, 701 (1984).

**5.** *See generally* Customs Modernization Act and Section 592 of the Tariff Act of 1930 Hearing Before Subcomm. on Trade of House Comm. on Ways and Means on H.R. 9220, 94th Cong., 2d Sess. (1976) [hereinafter cited as "1976 House Hearing"]; Customs Procedural Reform Act of 1977 Hearings Before Subcomm. on Trade of House Comm. on Ways and Means on H.R. 8149 and H.R. 8222, 95th Cong., 1st Sess. (1977) [hereinafter cited as "1977 House Hearings"];

Customs Procedural Reform Act of 1977 Hearing Before Subcomm. on Int'l Trade of Senate Comm. on Finance on H.R. 8149, 95th Cong., 2d Sess. (1978) [hereinafter cited as "Senate Hearing"].

**6.** *See, e.g.,* Peterson, *Civil Customs Penalties Under Section 592 of the Tariff Act: Current Practice and the Need for Further Reform,* 18 Vand.J. Transnat'l L. 679, 685 (1985) [hereinafter cited as "Peterson"].

**7.** *See* T.D. 74–287, 8 Cust.Bull. 553, 555–58 (1974).

gated penalty" could not "exceed the forfeiture value". *Id.* If an importer refused to pay the mitigated amount, Customs would refer the case to a United States Attorney, who would sue in district court to recover the full forfeiture value. *See, e.g.,* Peterson at 686. Upon a finding that the importer had violated section 592, the court was required to grant judgment for that value regardless of the degree of his culpability. *See, e.g., id.* and *United States v. Brown,* 404 F.Supp. 968 (S.D.N.Y. 1975), *aff'd,* 538 F.2d 315 (2d Cir.1976).

The 1978 Act provided for trial *de novo* of all issues, including the amount of any penalty to be assessed for a violation of section 1592(a). Subsection (c) now sets the maximum penalties that can be recovered as follows:

(1) Fraud.—A fraudulent violation of subsection (a) of this section is punishable by a civil penalty in an amount not to exceed the domestic value of the merchandise.

(2) Gross negligence.—A grossly negligent violation of subsection (a) of this section is punishable by a civil penalty in an amount not to exceed—

(A) the lesser of—

(i) the domestic value of the merchandise, or

(ii) four times the lawful duties of which the United States is or may be deprived, or

(B) if the violation did not affect the assessment of duties, 40 percent of the dutiable value of the merchandise.

(3) Negligence.—A negligent violation of subsection (a) of this section is punishable by a civil penalty in an amount not to exceed—

(A) the lesser of—

(i) the domestic value of the merchandise, or

(ii) two times the lawful duties of which the United States is or may be deprived, or

(B) if the violation did not affect the assessment of duties, 20 percent of the dutiable value of the merchandise.

Self-evidently, the concept of penalizing an importer based on his degree of culpability had its origins in the guidelines for mitigation that were used by the Service in conjunction with the prior provision. *See* H.R.Rep. No. 621, 95th Cong., 1st Sess. 15 (1977). Indeed, "many of the Act's section 592 reforms basically track current Customs practice"[8], including the provision now paragraph (d), which is described in the House Report as follows:

*Under 592(d) ..., the intent is to codify the existing administrative practice of mitigating claims for forfeiture value on condition that any loss of revenue is deposited with the United States.* This covers cases where Customs may not wish to assess a penalty (e.g., with petty or technical violations), but nevertheless, wishes to recover lost revenue. *Id.* at 16 (emphasis added).

As enacted, section 1592(d) contrasts with other proposals which were introduced in Congress or suggested by importers and which did provide for a new cause of action for duties. For example, in 1975 Congressmen Roybal and Corman introduced legislation to reduce the penalties and permit a cause of action for the recovery of duties lost. *See* H.R. 11089, 94th Cong., 1st Sess. (1975), *reprinted in* 1976 House Hearing at 410–11. Their bill provided:

(d) If the determination of the appropriate customs officer as to the amount of duties payable on such merchandise has become final, by reason of liquidation of the entry or entries of such merchandise, without assessment of the full amount of the duties deemed by the appropriate customs officer to be payable thereon, there shall be assessed on such merchandise additional duties equal to the amount of the underpayment of the duties deemed due thereon and not theretofore assessed and paid, in addition

---

**8.** Recent Developments, *Anachronism Laid to Rest: Customs Reform Act Accomplishes Long Overdue Reform of Section 592 of the Tariff Act* of 1930, 10 Law & Policy Int'l Bus. 1305, 1307 (1978).

to the penalty hereinabove provided in subsection (b) or (c) of this section.

(e) Such penalties and additional duties as may be assessed under subsections (b) or (c) and (d) of this section may be remitted or mitigated in whole or in part by the Secretary of the Treasury pursuant to a petition for remission of [*sic*] mitigation filed under the provisions of section 618 of the Tariff Act of 1930 (19 U.S.C.A. 1618).

(f) If any consignor, seller, owner, importer, consignee, agent, or other person, as the case may be, shall, within one hundred and eighty days after the date of notice of the final determination of the Secretary of the Treasury upon his petition for remission or mitigation filed under subsection (e) of this section, bring a civil action in the Customs Court as provided in section 2632 of title 28 of the United States Code, as amended, requesting judicial review thereof by the United States Customs Court, the said United States Customs Court shall have jurisdiction to review said determination as to the amount of the underpayment of lawful duties, if any, including all findings and determinations entering into the same, and as to the applicability of subsections (b), (c) and (d) of this section, none of which determinations and findings shall be presumed to be correct. The proceedings in the United States Customs Court shall be a trial de novo, pursuant to such rules as the Customs Court may prescribe: *Provided,* That payment of the penalties and additional duties assessed under subsection (b) or (c) and (d) of this section shall not be required during the pendency of the proceeding initiated by the filing of a civil action in the United States Customs Court, and shall be deferred until after the final judicial determination thereof: *And provided further,* That the filing of such a civil action in the United States

Customs Court shall, until after the final judicial determination thereof, act as a stay of any proceedings theretofore or thereafter instituted by the United States in a Federal district court to collect the amount of said penalties and additional duties: *And provided further,* That nothing in this section shall be deemed to deprive any person of any and all rights and remedies (including trial by jury) of a party in a suit brought by the United States in any Federal district court to collect any penalties and additional duties assessed under section 592 of the Tariff Act of 1930 (19 U.S.C.A. 1592) prior to or after the effective date of this Act, except that if such person elects to bring a civil action as provided herein to invoke the jurisdiction of the United States Customs Court for a review of the final determination of the Secretary of the Treasury, a final judicial determination of said civil action shall be conclusive of all matters litigated therein. *Id.*

According to this bill, the aggregate sum of duties and penalties recoverable by the government would have been significantly less than the amount that can be obtained now under the 1978 Act.

The present provision directs that the "appropriate Customs officer shall require that such lawful duties be restored". 19 U.S.C. § 1592(d). One commentator has noted that this

> language seems more in the nature of an instruction to Customs in the performance of its administrative functions than the establishment of a claim for such duties that could be enforced in court.[9]

His commentary seems correct in concluding that

> subsection (d) was merely intended as authority for Customs to continue to require the payment of lost duties as a condition of mitigation. Once the mitiga-

---

**9.** O'Kelly, *Changes Under the Customs Procedural Reform and Simplification Act,* 58 St. John's L.Rev. 815, 821 (1984) [hereinafter cited as "O'Kelly"]. To be sure, the term "appropriate Customs officer" does not refer to judges of this Court of International Trade. Rather, the Service has submitted that

Customs statutes traditionally used the phrase "appropriate Customs officers" in order to leave to the administering authority the right to assign specific administrative functions as a matter of efficient, effective management. Senate Hearing at 64.

tion process has run its course, and the case goes before the Court, as under old section 592, the government's action is limited to a claim for a monetary penalty. O'Kelly at 823.

Indeed, subsection (e), which is quoted in full at page 5 above, provides only for proceedings in this Court of International Trade for "the recovery of any monetary penalty". As for the placement in section 1592 of authority for Customs to continue to require the payment of lost duties as a condition of mitigation, that location can best be understood in the context of some importers' having suggested that Congress make section 1618 inapplicable to mitigation of penalties for section 1592(a) violations. *See, e.g.,* 1976 House Hearing at 206 (proposal of American Importers Association); 1977 House Hearings at 348 (proposal of JFK Airport Customs Brokers Association, Inc.). While the 1978 Act did not adopt this suggestion, the statute did incorporate in section 1592 features of the mitigation procedure found in the other section.

■ In summary, whether section 1592 is viewed as a whole [10], or whether paragraph (d) thereof, to wit,

[n]otwithstanding section 1514 of this title, if the United States has been deprived of lawful duties as a result of a violation of subsection (a) of this section, the appropriate customs officer shall require that such lawful duties be restored, whether or not a monetary penalty is assessed,

is considered separately in the light of its own language and the intent of Congress

to ameliorate section 592, this court is unable to conclude that this provision constitutes an independent cause of action.

## II

The motion of McAfee and of St. Paul each raises the question of delimitation by time of claims under section 1592(d). Indeed, had Congress intended this paragraph to be an independent cause of action, the 1978 Act might have prescribed a period of limitation thereof much as that statute amended section 621 of the Tariff Act to conform to the enacted gradations of culpability for the monetary penalties. While paragraph (d) does dispense with the strictures of 19 U.S.C. § 1514 [11], the absence of any specific, alternative limitation has resulted in courts' reaching different conclusions thereon. *Compare United States v. Appendagez, Inc.,* 5 CIT 74, 560 F.Supp. 50 (1983), *with United States v. RCA Corp., Consumer Electronics Division,* 5 ITRD 1807 (S.D.Ind.1983), *reh'g denied* (Sept. 4, 1985). At a minimum, both courts rejected the government's position, reiterated herein, "that there is no statute of limitation on a duty collection action instituted pursuant to section 592(d)". Plaintiff's Opposition to McAfee, p. 14.

■ As was true in *RCA,* the issue regarding any time bar of this action involves questions of fact not conclusively determined by the motion papers before this court. For example, Count I of the complaint alleges fraud, thereby calling into account the date of the government's discovery thereof if section 1621 applies. *Cf.*

---

**10.** *Cf. United States v. Gordon,* 10 CIT ——, 634 F.Supp. 409, 416 n. 11 (1986).

**11.** This section provides for the finality of liquidation in the absence of a timely protest (generally filed within 90 days thereof). One of the statutory exceptions to this rule is section 1521, which states:

If the appropriate customs officer finds probable cause to believe there is fraud in the case, he may reliquidate an entry within two years (exclusive of the time during which a protest is pending) after the date of liquidation or last liquidation.

In *American Motorists Insurance Co. v. United States,* 5 CIT 33, 35–36 (1983), the court did not

analyze the relationship, if any, of paragraph (d) to this provision since it found

that the subject entries were properly reliquidated under the authority of section 521. It is, therefore, unnecessary to consider whether Customs might retain the duties pursuant to section 592(d).

Here, Customs could have reliquidated the entries under section 1521. During the two-year period after the last entry, the alleged violators of paragraph (a) were subjected to criminal prosecution for the acts alleged in this complaint. If there was probable cause to support an indictment, there certainly had to have been sufficient cause to reliquidate.

*id.* at 13–14. Whatever the answer to this issue of law, however, the main thrust of the instant motions is that the plaintiff cannot recover lost duties against parties who have not violated 19 U.S.C. § 1592(a).

On the one hand, the plaintiff contends in its opposition to the motions that, prior to enactment of section 1592(d), Customs was "powerless" to collect increased duties if it discovered after liquidation that they were owing, yet counsel also concede the existence, as they must, not only of section 1521, but also of 19 U.S.C. § 1501 ("[a] liquidation ... may be reliquidated in any respect by the appropriate customs officer on his own initiative within ninety days").[12] In fact, McAfee and St. Paul do not contest the ability of the Service to recover duties from them under these sections of the Tariff Act. *See, e.g.,* Defendant E.C. McAfee & Co.'s Consolidated Motion Pursuant to USCIT R. 12, pp. 2–3; St. Paul Brief, pp. 6, 13. In other words, in their view, the government was not without any recourse against them as importer of record and surety, only one that expired completely two years after the date of liquidation. The plaintiff makes no showing why it could not have availed itself of these traditional methods herein.

Having failed to do so, both sides are thus left to contest the meaning of section 1592(d), as enacted. On its face, that paragraph clearly shows that deprivation of lawful duties "as a result of a violation of subsection (a) of this section" 1592 is what entitles the appropriate customs officer to "require that such lawful duties be restored". That is, and this court so concludes, such restoration is directly contingent upon wrongdoing.[13] However, the statute does not make restoration contingent upon assessment of a monetary penalty. Hence, the plaintiff contends, McAfee and St. Paul can be held jointly and severally liable for the duties.

A number of decisions leaves little doubt that parties in the movants' shoes are held to stringent standards. For example, in *United States v. Federal Insurance Company,* 805 F.2d 1012 (Fed.Cir.1986), the court held that an importer, and not the government (even though guilty of "affirmative misconduct"), bears the risk of nonpayment of import duties by a licensed broker who fails to pay over monies the broker received from the importer for payment. In *United States v. F.H. Fenderson, Inc.,* 11 CIT ___, 658 F.Supp. 894, (1987), the court has ruled that section 1592 permits imposition of a penalty against an exporter and against an importer of record on the same transaction. And in *United States v. Imperial Food Imports,* 11 CIT ___, 660 F.Supp. 958 (1987), the court granted the government summary judgment against a surety on its bond where it had not received notice of the principal's default.

Notwithstanding such standards, the plaintiff fails to point to a single reported case where lost duties have been recovered under section 1592(d) against an innocent party. In *United States v. Carl Ross,* 6 CIT 270, 574 F.Supp. 1067 (1983), the two named defendants were essentially the same individual. Moreover, that case entailed a threshold challenge to the court's subject-matter jurisdiction as a result of the notice procedure employed by Customs to claim such duties. Indeed, it has been argued persuasively that that case only involved a question of procedure at the administrative level and is not dispositive of the issue now before this court. *See* O'Kelly at 822. Eventually, the case was dismissed on consent. In *United States v. Quintin,* 7 CIT 153, *appeal dismissed,* 746 F.2d 1452 (Fed.Cir.1984), the only defendant was the alleged wrongdoer, who appeared in the action *pro se* and was as-

---

**12.** *Compare* Plaintiff's Opposition to McAfee, pp. 7–8 *with* Plaintiff's Opposition to Defendant St. Paul Fire and Marine Insurance Company's Motion for Judgment on the Pleadings, pp. 4–5. In fact, comparison of the dates involved, *supra* page 3, indicates that the Service could have availed itself of this provision.

**13.** Here, the movants are not charged with any malfeasance, nor therefore is any commensurate penalty sought—although the duties claimed amount to $253,612.60.

sessed a modest amount ($60.90) in additional duties. The issue at bar was not raised in that case. *See, e.g.,* trial transcript *passim* (Nov. 28, 1983).

This action has also been brought, of course, against the alleged violator of section 1592(a), defendant Blum. The court expresses no opinion herein as to his liabilities, if any. But the motions of his co-defendants require this court, in the absence of conclusive congressional or case-law guidance, to render an opinion now that the most just conclusion of law is that paragraph (d) of 19 U.S.C. § 1592 does not permit Customs Service recovery of lost duties from persons who have not violated subsection (a) thereof. A very recent commentary on this problem states that plaintiff's

> argument leads to a very harsh result, holding an innocent party liable for duties that escaped collection because of another party's defalcation. In interpreting section 592(d), one cannot divorce it from the rest of section 592. At least one of the purposes of section 592 is to deter violations of the customs laws. To that end, section 592(d) was added to ensure that section 592(a) violations do not result in the United States being deprived of lawful duties. Indeed, Congress created an express nexus between section 592(a) violations and section 592(d) duty losses. But it is difficult to see how deterrence is enhanced by holding innocent parties liable for duties that escaped collection because of someone else's section 592(a) violation.[14]

Whether harsh or not, the result prayed for by the plaintiff does not lie; its complaint fails to state a claim upon which relief can be granted against either defendant McAfee or defendant St. Paul, and judgment must therefore be entered, granting their respective motions.

### JUDGMENT

This action having been duly submitted for decision, and the court, after due deliberation, having rendered a decision herein;

Now, therefore, in conformity with said decision, it is

ORDERED, ADJUDGED and DECREED that the motion of defendant E.C. McAfee & Co. to dismiss be, and it hereby is, granted; and it is further

ORDERED, ADJUDGED and DECREED that the motion of defendant St. Paul Fire and Marine Insurance Co. for judgment on the pleadings be, and it hereby is, granted; and it is further

ORDERED, ADJUDGED and DECREED that there is no just reason for delay in entry of judgment, dismissing this action as against defendant E.C. McAfee & Co. and defendant St. Paul Fire and Marine Insurance Co., and therefore that this judgment be entered forthwith on behalf of these defendants in accordance with CIT Rule 54(b).

---

**14.** Kevin C. Kennedy, *Civil Penalty Proceedings Under Section 592 of the Tariff Act of 1930,* 10 Ford. Int'l L.J. 147, 200 (1987) (footnotes omitted).